UNITED STATES *v.* BENNECHE (No. 1465).[1]

BOXWOOD STICKS IN THE ROUGH.

These sticks are in the rough and not further advanced than cut into lengths suitable for use in making umbrellas, parasols, etc. They remain boxwood sticks in the rough and their principal use, as was shown, is for umbrella or parasol handles, and it further appears that umbrella handles are parts of umbrella sticks. Paragraph 713, tariff act of 1909, applied, and the sticks were entitled to free entry.

United States Court of Customs Appeals, April 14, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36342 (T. D. 34742.)
[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, on the brief), for the United States.
*B. A. Levett* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:
The merchandise in this case is sticks of boxwood approximately 14 inches in length and of small diameters. The evidence does not disclose how the fact is, but the Board of General Appraisers found

that they were cut from the root end of the boxwood stems. The appearance of the sticks warrants the conclusion. They are covered with protuberances from which either the small rootlets or limbs extending therefrom have been cut off. Whatever bark was on the same has been removed. In their present condition they well warrant the finding of the board that they are in their rough, natural state. They are, in fact, rough, have sharp points where the roots or limbs have been cut off, as well as in other places—sharp enough to tear the skin of a user's hand. To fit them for handles for any practical use they must at least be smoothed, and to attain the condition of ordinary umbrella handles must also be stained or varnished. If a perfectly straight handle be required, few answer to that condition. The evidence shows that they are to be used for making umbrella handles. If crooked handles are desired, they must be steamed and bent and in each a hole must be drilled or bored to receive the metal or other rod or stick which constitutes the runner, stretcher, or stick, however it may be denominated, necessary to a finished umbrella. The evidence also shows that umbrella handles are parts of umbrella sticks; that while formerly the runner, stretcher, or stick was of wood doweled to the handle, it is now usually of metal, although it may sometimes happen that the stick and handle are one piece of wood.

Pursuant to instructions from the Treasury Department (T. D. 33634) the collector assessed these sticks as wood, unmanufactured, under paragraph 203 of the tariff act of 1909. The importer claimed free entry under paragraph 713. The board sustained the protest. The Government appealed and upon the argument here claims that the sticks are dutiable as assessed, but, if not, that they may be classified under paragraph 480 as an article manufactured in whole or in part and also that they are equally within the provisions of paragraph 478 as umbrella sticks.

We quote here the material parts of paragraphs 203, 478, and 713.

203. Sawed boards, planks, deals, and all forms of sawed cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, and all other cabinet woods not further manufactured than sawed, * * * veneers of wood, and wood unmanufactured, not specially provided for in this section, * * *.

478. * * * Sticks for umbrellas, parasols, or sunshades, and walking canes, finished or unfinished, * * *.

713. Woods: Cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, and all forms of cabinet woods, in the log, rough, or hewn only, and red cedar (*Juniperus Virginiana*) timber, hewn, sided, squared, or round; sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, reeds unmanufactured, india malacca joints, and other woods not specially provided for in this section, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

The instructions of the Treasury Department, as appears thereby, were based upon the decision of the Board of General Appraisers in Abstract 22873 (T. D. 30424, erroneously referred to as T. D. 33424).

In that case, so far as the printed decision shows, the merchandise was umbrella handles, the lengths of which were not stated. The board held that they were not of sufficient length to warrant classification as sticks for umbrellas. They were assessed for duty under paragraph 198 of the act of 1897, which is identical with paragraph 203 above quoted, and claimed to be entitled to free entry under paragraph 700 of the same act, which, for the purposes of this case, is not unlike paragraph 713 of the act of 1909. The protest was overruled.

The instructions also refer to T. D. 24995, in which the board considered, as appears by the printed decision, wooden handles for umbrellas in the usual form for such articles and which, omitting the crooked portion, were about 5 inches in length. In its opinion the board said that from an inspection of the exhibits and in view of the testimony the articles were not sticks for umbrellas within the meaning of paragraph 462 of the act of 1897, which for the purposes of this case is not different from paragraph 478, quoted above. It further found that the handles were not within paragraph 700 of the free list, and held them dutiable as manufactures of wood not more specially provided for than in paragraph 208 of the act of 1897, under which the importers claimed.

In neither of the above cases did the board state the condition of the merchandise, as to whether or not it was finished and ready for use, other than as above set forth, but we infer from what it said that it was in a more finished condition than are the sticks now before us.

The board in the case at bar said:

It is evident that duty was assessed upon the theory that these sticks are umbrella handles and not umbrella sticks. They run approximately 14 inches in length and each is apparently cut from the root end of a boxwood stem and are in the rough, natural state. From the testimony it appears that for a long period of years they have always been passed free of duty. While it is true that some of them before being used are bent, nevertheless many of them are used in the natural form with a steel rod inserted. They are more than umbrella handles, and it is a matter of common knowledge that full-length umbrella sticks are no longer used. This fact, together with a long-continued practice of classifying them free of duty, warrants a reversal of the collector's action, and the protests are therefore sustained.

We agree with the conclusion of the board in this case.

Paragraph 203 provides that merchandise dutiable thereunder is sawed forms of certain woods and all other cabinet woods not further manufactured than sawed and wood unmanufactured not specially provided for.

Paragraph 713 gives free entry to certain woods, including boxwood and all forms of cabinet woods in the log, rough, or hewn only, and to sticks of certain woods and other woods not specially provided for, in the rough, or not further advanced than cut into lengths

suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

The merchandise to which free entry is thereby given of course would not be *further manufactured* than that for which a duty is provided under paragraph 203, and so, but for paragraph 713, would be dutiable under paragraph 203. Construing the two together, however, application and force must be given to paragraph 713 before merchandise otherwise within paragraph 203 can be held dutiable thereunder. The boxwood here is not in the log. Its origin is not shown by the record.

In the Encyclopædia Britannica it is said that boxwood is wood obtained from the well-known tree or shrub called the common box, which is in general use for garden borders and other ornament il purposes and is found in Europe and Asia; and also from another variety known as the Turkey boxwood found in the islands of the Mediterranean, Turkey, and Asia Minor. Of the common variety it is said that it is a slow-growing plant, on an average attaining about 16 feet in height and a mean diameter of $10\frac{1}{2}$ inches; while the Turkey boxwood is a tree of considerable size, growing to a height of 80 feet, and supposed to be the chief source of supply of boxwood coming into European commerce by way of Constantinople. Of the wood of both these varieties it is said that it is dense in structure and of fine, uniform grain, giving it unique value for wood-engraving purposes, and that it is used largely in the manufacture of measuring rules, mathematical instruments, and many minor articles. See also Notes on Tariff Revision, 1909 (p. 255).

Understanding paragraph 713 in the light of this information, which is treated as correct, it would seem that the provision for boxwood logs in the first part of the paragraph would more often apply to logs derived from the Turkey boxwood; and that the provision for sticks of certain named woods, in which boxwood *eo nomine* is not included, would by the use of the term "other woods" be extended to sticks or roots of boxwood such as those under consideration here. Consistency would demand that no distinction be made between boxwood logs and boxwood sticks if in the rough within the meaning of the paragraph.

Paragraph 713 clearly indicates that the sectional sawing or cutting of wood into logs, hewing the same, or the sectional cutting thereof into sticks of suitable lengths for certain uses, if otherwise left in the rough, does not exclude the wood therefrom.

Paragraph 203 indicates that it is intended to apply to substantially the same kinds of wood mentioned in paragraph 713, if advanced from the conditions prescribed by the latter paragraph by longitudinal sawing and such processes of manufacture as do not advance the wood beyond the sawed condition, unless it is elsewhere otherwise provided for.

It is manifest that the cutting off of limbs or rootlets, not accompanied by any smoothing or finishing process, would still leave the wood in the rough, and we think the removal of the bark does not change that condition. It is well known that the preservation of some kinds of timber requires the early removal of the bark after cutting, and Congress could not have intended that its removal alone would change the classification of woods from paragraph 713 to paragraph 203. It would not be a manufacture any more than would hewing, which necessarily involves bark removal; in no way is it a treatment of the wood itself; it does not change or alter its condition, and if in the rough before the bark was removed, its removal would not affect it for tariff purposes.

We think these sticks are in the rough and not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, etc. This provision of paragraph 713 does not mean that a cutting into lengths suitable for purposes other than those specified in the last part of the paragraph excludes classification thereunder unless thereby the sticks are further advanced than when cut into lengths suitable for sticks for umbrellas, etc. It is no more an advancement to cut the rough boxwood sticks into lengths suitable for umbrella handles than it is to cut them into lengths suitable for umbrella sticks, canes, etc. They are still boxwood sticks in the rough.

The fact must not be lost sight of that these sticks are *not* umbrella handles, but are to be used in the making of those articles. They are material suitable for that use and have been cut into lengths adapted to that purpose. Their appearance does not stamp them as being unsuitable for other uses. The evidence is that their *principal* use is for umbrella or parasol handles. They are by the witnesses described either as "sticks," "boxwood handles" or "raw rose, boxwood handles"; in other words, sticks or handles.

This view makes it unnecessary to consider at length the other contentions of the Government further than to say that the claim that the merchandise is sticks for umbrellas and dutiable under paragraph 478 is based upon the fact that an importer's witness said that he thought an umbrella stick and an umbrella handle were about the same. Fairness to the witness, however, requires that it should be noted that he said he was not an expert in the making of umbrellas and had nothing to do with manufacturing thereof; that the importations in question were used in making umbrella handles; "that a very, very few" umbrella sticks included the handles; that the sticks here were parts of umbrella sticks; and that to the merchandise here the stick was added. Another witness testified that umbrellas are now generally made by inserting a steel rod in the end of the handles; that years ago a wooden rod was used instead of one of steel and was united to the handles by a dowel.

In T. D. 23089 the board held that handles were not sticks for umbrellas, although sticks with handles might be included in the term "sticks for umbrellas."

Paragraph 478 refers to sticks for umbrellas finished or unfinished. The sticks here, as already appears, are not in any event such articles. At most they are materials from which umbrella handles, not sticks for umbrellas, may be made.

As we view it, a consideration of the administrative practice in part relied upon by the importer and the board is unnecessary.

The judgment of the Board of General Appraisers is *affirmed*