BEFORE THE FIRST DIVISION, OCTOBER 16, 1950

**No. 54751.**—Superior Dowel Co. *v.* United States, protest 143118–K (New York).

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "rough shaped hardwood plain dowels" and was assessed with duty by the collector at the rate of 5 per centum ad valorem under the provisions of paragraph 406 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 406), as modified by the trade agreement with Canada, T. D. 49752, reading as follows:

Hubs for wheels, heading bolts, stave bolts, last blocks, wagon blocks, oar blocks, heading blocks, and all like blocks or sticks, roughhewn, or rough shaped, sawed or bored.

As originally filed the protest claim was for free entry under the provision in paragraph 1803 of the said act for sawed lumber, and while this claim was not specifically abandoned, reliance is placed by counsel for the plaintiff upon the claim made by timely amendment of the protest for free entry under paragraph 1806, which reads as follows:

Woods: Sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, india malacca joints, and other woods not specially provided for, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

There is not any dispute as to the facts. A sample of the imported dowels received in evidence without objection as collective exhibit 1 shows them to be

three-fourths of an inch in diameter and 27¾ inches in length. According to the undisputed testimony of the president and owner of the plaintiff company, the steps in the manufacture of dowels such as collective exhibit 1 from the raw product are as follows:

We'll take the tree first. The tree is cut down, cut into bolts of 3 or 4 feet, or 5 or 6 feet, depending upon the requirements. The bolt is then put on a bolter saw, sawed into boards or squares. The squares then are put to dry. When dried it is brought into the machine room and put through the dowel machine and turned into a round. If there are any bad spots in the 3 or 4 foot squares, it is immediately cut out and the next standard length is saved from that square. (R. p. 9.)

The witness, who had had 30 years' experience in the manufacture of and in dealing with wooden dowels generally, stated that while the dowels involved were in standard lengths, such standardization was for the purpose of economy and saving of waste, and that the imported dowels were suitable for many uses, among them for umbrella handles of the hook-handle type, as hanging bars in wardrobe closets, macaroni sticks, and "for a million different uses." In these various uses, he said, such dowels were cut up into various lengths.

It is quite apparent that the classification and assessment of the merchandise in question were made upon the theory that the imported dowels had been fabricated for and were dedicated to a specific use. The record refutes this theory and establishes that the articles as imported have no element of dedication to a specific use or class of uses and so removes them from the purview of paragraph 406. *United States* v. *Pacific Customs Brokerage Co.*, 31 C. C. P. A. 102, C. A. D. 256, and *John A. Hunter Hardwood Corp.* v. *United States*, 21 Cust. Ct. 139, C. D. 1143.

We are unable to agree, however, with the contention of counsel for the plaintiff that the dowels in question are properly classifiable under paragraph 1806.

According to Webster's New International Dictionary, 2d edition, 1945, dowels are wooden rods or sticks. However, paragraph 1806 requires that the sticks covered thereby be "in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes." The evidence indicates that the dowels at bar are "rough-turned," and without further evidence on the point we are doubtful that a "rough-turned" dowel may be said to be "in the rough." In *United States* v. *Benneche*, 6 Ct. Cust. Appls. 92, T. D. 35339, it was indicated that "in the rough" means in the natural state or at least no further advanced than the cutting off of limbs or rootlets or the removal of bark. The evidence shows that the dowels in question have been processed and are at least semifinished, and an examination of collective exhibit 1 shows that although they have not been planed or sanded they are comparatively smooth to the touch.

The language of paragraph 1806 "or not further advanced than cut into lengths suitable for sticks for umbrellas," etc., obviously means not further advanced from the rough state than cut into lengths suitable for such sticks. Since the dowels at bar are further advanced from the rough state by reason of the sawing into squares and the putting through the doweling machine, they are not within the quoted provision, and we conclude that they are not covered by paragraph 1806.

Nor, in our view are they covered by the other provision under which plaintiff claims, paragraph 1803. The provisions of that paragraph, generally speaking, cover logs, timber, and lumber, and the last two only when sawed, and not further manufactured than planed, and tongued and grooved. Moreover, there is nothing in the record to indicate the kind of wood from which the dowels at bar were made, which is of importance because of the language in paragraph 401 of the dutiable schedule covering sawed lumber and timber if of certain woods.

On the record as made we have no other course than to overrule the protest claims without affirming the action taken by the collector. Judgment will therefore issue accordingly.