ATKINS, KROLL & CO. *v.* UNITED STATES    (No. 5094)\*

United States Court of Customs and Patent Appeals, April 25, 1963

*Barnes, Richardson & Colburn* (*Frank L. Lawrence* and *Joseph Schwartz*, of counsel) for appellant.

*John W. Douglas*, Assistant Attorney General, *Andrew P. Vance*, Chief, Customs Section, *Harold L. Grossman* and *Mollie Strum* for the United States.

[Oral argument February 5, 1963, by Mr. Schwartz and Miss Strum]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Jr., Associate Judges

MARTIN, Judge, delivered the opinion of the court:

This is an ▮▮▮ appeal from a judgment of the United States Customs Court, Third Division, C.D. 2286, overruling the importer's protest and sustaining the collector's classification and duty assessment of merchandise, palmyra stalks, imported from India.

The collector classified the palmyra stalks as fibrous vegetable substances, manufactured, in whole or in part, not specially provided for, under the nonenumerated provision of paragraph 1558 of the Tariff Act of 1930, as modified.

Appellant contends that the palmyra stalks come within the purview of paragraph 1806 of the free list of the Tariff Act of 1930.

Paragraph 1806 reads as follows:

_____

\*C.A.D. 821.

Woods: Sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, india malacca joints, and other woods not specially provided for, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

In a deposition of a director of the company that sold the involved palmyra stalks to the appellant, the palmyra stalk is described as the rib or vein of the leaf of the palmyra palm. To separate the stalks from the leaves, the leaves are cut from the palm tree, left to dry out for two or three days and then the stalks are pulled away from the leaves by hand. Some adherent leaf matter still attaching to the stalks is then cut from the stalks by drawing the stalks along a knife. The stalks are then tied into bundles and again cut to the requisite lengths.

At the trial, appellant's witness, an import trader, testified that the palmyra stalks as imported are cut uniformly in specific lengths as specified by appellant's customers. Another witness for appellant, who qualified as an importer, testified that the palmyra stalks are used in the making of rotary brushes and push brooms for street sweeping as imported without further treatment of any kind whatsoever except for soaking them in water so that they can be twisted. A third witness for appellant testified that merchandise similar or identical to the palmyra stalks as imported is wood since it has the vascular bundles and fibrous tissue that fit the definition of wood.

The Customs Court in overruling the importer's protest stated [1] in part:

These [the merchandise] are sticks of wood. Before deciding whether they are "in the rough," we first consider the evidence as to the cutting of the sticks into lengths.

These sticks were cut into lengths specified by manufacturers of rotary brooms and push brooms. From that, it is fair to infer that these were the lengths suitable for the uses broom manufacturers would make of the palmyra stalks. Whether or not such lengths also were of value in facilitating shipment or economizing on freight (and evidence as to this is not persuasive), it is clear that these palmyra stalks were cut into lengths specified by the purchasers, who were broom manufacturers.

Appellant in contending that the palmyra stalks are classifiable under paragraph 1806 urges that the stalks are "in the rough" and that the cutting to length was required for production of an exportable commodity and was essential to convenience and economy in packaging, storage and transportation. Appellant argues further that the stalks could be equally classified under the latter portion of the quoted paragraph since the palmyra stalks are not further advanced than cut to lengths suitable for the specified articles in that paragraph. Appellant urges that the descriptive term "cut to lengths suitable for

---

[1] This quote is from the opinion of two judges of the court. The third judge handed down a concurring opinion.

sticks for umbrellas * * *" is one of extension and not of limitation to the articles therein listed. It is contended that the disjunctive "or" in "Sticks of * * * woods * * * in the rough, or not further advanced than cut * * *" implies different scope between the provisions thus separated, but does not prevent overlapping.

Appellee urges that the palmyra stalks are manufactured articles, properly dutiable, as classified, under paragraph 1558, as modified, since the evidence clearly establishes that after the stalks were separated from the adherent leaf matter, they were advanced from said crude or primary state, by sorting, trimming and cutting in preparation for their ultimate, specifically intended use. Appellee contends that the stalks are not classifiable under paragraph 1806 since the stalks are not wood within the common meaning of the word but if they are wood they are not "in the rough" because of their advancement by extensive manipulation from their crude or primary state. Furthermore, appellee argues, since there is no proof whatsoever in the record that the stalks were cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods or canes, they are not classifiable under the provision in paragraph 1806 for sticks cut into such lengths.

Here, as in all appeals of this type, ■ appellant has the dual burden of establishing that the classification of the collector is erroneous and that its proposed classification is correct. Since it appears that this controversy is centered more around the question of the correctness of appellant's proposed classification, we shall direct our attention to this phase of the matter.

Appellant has introduced evidence supporting its contention that the importations are wood while appellee has introduced none to rebut this fact. Therefore, we will assume for the purposes of this discussion that the importations are wood. We can therefore confine ourselves to questions of whether the imported stalks come within the purview of paragraph 1806 by being "wood * * * in the rough," or not "further advanced than cut into lengths suitable for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes."

Insofar as being "in the rough" we do not agree with appellant's contention on this score. According to the record the stalks before being imported were not only extracted or separated from the palmyra leaf but adherent leaf matter still attached to the stalks was cut from the stalks by drawing the stalks along a knife. Also before importation the stalks were cut at both ends *to sizes specified by the importers.* When they arrived in this country they were ready for use by the broom manufacturers without further treatment of any kind whatsoever.[2]

---

[2] We do not believe that the soaking of the stalks subsequent to importation in order that they could be twisted should be considered as a significant factor in resolving the issues.

There is no question but that the trimming or cutting away of adherent leaf matter and the cutting to specific sizes was done primarily to prepare the merchandise for its ultimate purpose and any advantage achieved by this treatment in facilitating its transportation was only secondary.

Regarding this matter, we agree with the analysis of the Customs Court wherein it stated:

> Having held, as we do, that these sticks of wood have been cut into lengths for a particular use, and that this use is not one enumerated in paragraph 1806, the question remains for decision as to whether they are, nonetheless, sticks of wood in the rough. What did Congress intend? We have found that they are not "in the rough," because they have been advanced by cutting into lengths. If sticks of wood, cut for any use, are sticks of wood "in the rough," then Congress was clearly redundant and added nothing by the cutting-into-lengths provision, which is an alternative to the "in the rough" provision.

We also agree with counsel for appellee that appellant's own definition of "rough" negates its contention that the importations are "in the rough." Appellant cites the Century Dictionary definition of "rough" which includes "uneven" and "untrimmed." The evidence very definitely reveals that the imported stalks are trimmed of adherent leaf matter and cut to specified lengths. In other words, if the wood is cut to specified lengths *it is advanced beyond being in the rough.*

Since we are of the opinion that the imported stalks cannot be considered "in the rough," we come now to the question of whether the merchandise can come within the remainder of the paragraph. We believe not. It is our opinion that merchandise comes within the paragraph first, if it is wood *in the rough* and second, *or, if not in the rough,* if it is "cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes." Obviously Congress wanted to limit the free entry in this particular situation to the articles *named,* otherwise it could have provided generally "cut into lengths" and not named specific items or it could have indicated its intent to include more than the items specifically named in many ways. We do not see how Congress could have been more specific about its intent in this instance than by enacting the provision as it is. Under these circumstances we do not believe that the merchandise comes within that part of the provision either. Consequently, it is our opinion that the merchandise is not covered by paragraph 1806.

Appellant has called our attention to a number of cases which it contends supports its position. We have reviewed them and find in each instance the situation is different and, therefore, they are without significance here.

For instance, appellant relies very heavily upon *United States* v. *Benneche,* 6 Ct. Cust. Appls. 92, which involved stalks of boxwood to

be used for umbrella handles. The court upheld the importer's protest that the merchandise should be classified under paragraph 713 of the act of 1909 which paragraph had similar wording to that of paragraph 1806 of the Act of 1930. The court found that the wood was "in the rough" and also that it would come within the category of sticks for umbrellas even though the imported sticks were to be used as handles for umbrellas. It should be noted that the competing paragraphs in that case were paragraphs 203, 478 and 480 of the act of 1909. The collector had assessed the merchandise under paragraph 203. The Government claimed that the merchandise was dutiable as assessed, but if not it should be classified under paragraph 480 as an article manufactured in whole or in part and also that it was equally within the provisions of paragraph 478 as umbrella sticks. The material parts of paragraphs 203 and 478 read:

203. Sawed boards, planks, deals, and all forms of sawed cedar, lignum-vitæ, lancewood, ebony, box, granadilla, mahogany, rosewood, satinwood, and all other cabinet woods not further manufactured than sawed, * * * veneers of wood, and wood unmanufactured, not specially provided for in this section, * * *.

478. * * * Sticks for umbrellas, parasols, or sunshades, and walking canes, finished or unfinished, * * *.

In the first place, the competing paragraphs in that case required an entirely different approach by the court and naturally resulted in a different emphasis on different words involved. There was no necessity for the court there to endeavor to ascertain whether the Congress intended "or" in the particular phrase to be interpreted as connotating alternatives, or whether the items specifically named were merely exemplary or whether merchandise, in order to be covered, had to be one of the articles listed. However, these factors are significant in determining the issues here.

Furthermore, the court found there that upon arrival in the United States the imported sticks had to be further processed before they could be used to manufacture umbrella handles. The court stated "At most they are *materials* from which umbrella handles, not sticks for umbrellas, may be made." [Emphasis ours.] The court further found that the importations were "in the rough" and upon importation "they must at least be smoothed, and to attain the condition of ordinary umbrella handles must also be stained or varnished." Here, we have found that the imported merchandise was ready for use by the manufacturers of brooms without further significant treatment.

Another case brought to our attention by appellant is *United States* v. *Larzelere & Co.*, 6 Ct. Cust. Appls. 273. This case involved the importation of split rattan cut into lengths of about 12 inches to be used in the manufacture of street sweepers' brooms. There the question arose as to whether the collector was correct in classifying the merchandise under paragraph 385 of the act of 1913 as an unenumerated manufactured article, or under paragraph 648 of that act

of the free list, as suggested by the importer.   Paragraph 648 covered "woods" and had similar language to that of paragraph 1806 under discussion here.   Although the court agreed with the importer, it did so under conditions we do not have present in the case at bar. The court stated, in rendering its opinion:

It does not appear whether in the condition as imported this merchandise is or is not fit and ready to be used in the manufacture of these brooms, and from its appearance we may well suppose that it requires further manipulation and treatment.

This, of course, is entirely different than our finding as to the condition of the merchandise in the case at bar.

For the above reasons we *affirm* the judgment of the Customs Court.