(C. D. 2011)

J. E. BERNARD & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 24, 1958)

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Edward N. Glad* and *Joseph Schwartz* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Schwartz* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest consists of what is described by the parties as "cane," which was classified under the provision in paragraph 405 of the Tariff Act of 1930 for wood, unmanufactured, not specially provided for, and assessed with duty at the rate of 10 per centum ad valorem by virtue of the Presidential proclamation reported in T. D. 51802. It is claimed to be entitled to free entry under the provision in paragraph 1806 of the said act for—

Woods: Sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, india malacca joints, and other woods not specially provided for, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

(1)

There is no dispute between the parties that the merchandise consists of wood, or that it is in the form of sticks, and the only dispute centers on the question of whether they are "in the rough," it being clear that the lengths into which they were cut are not suitable for sticks for the articles mentioned in paragraph 1806.

According to the evidence, the source of the imported merchandise is a giant reed, Arundo donax, grown in France. This reed grows to considerable height and tapers from the bottom to the top, where there are a few stems with a sort of a flower. At intervals of 6 to 12 inches, there are on the stem of the reed what are called nodes, seemingly similar to those found in bamboo stems. The reed is hollow, except at the nodes, which divide it into sections.

In reaching the condition of the merchandise imported, the reed is first harvested and then "stripped," presumably meaning that the top stems and flower and the skin or bark are taken off. It is then sawed or cut sectionally, so that the result is a number of tubes, varying in length from 6 to 12 inches, represented by plaintiff's exhibit 1. The nodes are entirely cut off, as exhibit 1 does not show any sign of their presence. The pieces are then allowed to dry and season in the air, after which they are sorted into two diameter sizes, one being up to 24 millimeters in diameter and the other from 24 to 27 millimeters. The record indicates that there is also a specification as to the thickness of the wall of the reed pieces. They are then packed in sacks and exported to the United States, and, after importation, they are used in the manufacture of reeds for musical instruments.

It is apparent that the dispute between the parties centers around the question of whether the cutting of the reed into the lengths in which they are imported and the cutting off of the nodes took the same out of the category of "in the rough." It is the plaintiff's contention that this was done solely so that the merchandise could be conveniently sacked for shipping. The Government contends, on the other hand, that it was done to meet certain tolerances in the specifications as to diameter of the reed and thickness of the tube wall.

Although it is not brought out in the record, it is apparent that the cutting operation consisted of more than merely slicing through the reed at the nodes. The nodes are not present in the imported merchandise, so that two cuts must have been made for each length, one on each side of the node, and the node discarded.

It is also apparent that the purpose of cutting the reed into lengths was actually to get rid of the nodes so as to permit the sorting of the resultant hollow lengths of reed into the diameters of reed and wall thickness desired. In other words, it could not be determined whether

the reeds would meet the specifications as to wall thickness, at least, unless the nodes had been removed.

The lengths in which the sticks were cut did not *make* them suitable for any particular purpose—they were cut in those lengths only in order to see if they could be used for certain purposes. The cutting to length and elimination of the nodes did not cause the sticks to meet the tolerances of the specifications; the sticks met those tolerances as the result of natural growth and seasoning. The situation is that neither the cutting to length nor cutting off of the nodes advanced the sticks along the lines of their ultimate use, or of any other use. It merely made it possible to determine whether they could be used as raw material for the manufacture of musical instrument reeds.

Such operations as were performed on the sticks prior to importation did not advance them over the rough condition, and we are satisfied that they are properly classifiable as sticks "in the rough."

Our conclusion is consistent with the decision of the Court of Customs Appeals in the case of *United States* v. *Benneche*, 6 Ct. Cust. Appls. 92, T. D. 35339, cited and relied upon by both parties herein. That case related to boxwood sticks, approximately 14 inches in length and of small diameters. They were assessed with duty under the provision in paragraph 203 of the Tariff Act of 1909 for wood, unmanufactured, and were claimed to be entitled to free entry under the provision in paragraph 713 of the said act, which was a predecessor of and contained language in all material respects the same as that in paragraph 1806 of the present act.

It was clear that the boxwood sticks were not in lengths "suitable for sticks for umbrellas" but were in lengths suitable for making into umbrella *handles*, which are parts of umbrella *sticks*. In determining the meaning of the term "in the rough," the court indicated that *sectional*, as distinguished from longitudinal, sawing of sticks, would still leave them "in the rough," provided the sticks were not otherwise advanced beyond the condition of sticks cut into lengths suitable for sticks for umbrellas, etc. The court said:

* * * This provision of paragraph 713 does not mean that a cutting into lengths *suitable for purposes other than those specified in the last part of the paragraph* excludes classification thereunder unless thereby the sticks are further advanced than when cut into lengths suitable for sticks for umbrellas, etc. It is no more an advancement to cut the rough boxwood sticks into lengths suitable for umbrella handles than it is to cut them into lengths suitable for umbrella sticks, canes, etc. They are still boxwood sticks in the rough. [Italics added.]

Moreover, the court said that "the cutting off of limbs or rootlets, not accompanied by any smoothing or finishing process, would still leave the wood in the rough." We think the cutting off of nodes such as those originally present in the merchandise at bar is comparable to

and constitutes no more an advancement than the cutting off of limbs or rootlets.

We are satisfied that the merchandise at bar was not further advanced than "in the rough," within the meaning of that term as used in paragraph 1806. Judgment will, therefore, issue sustaining the protest claim for free entry accordingly.