(C. D. 2044)

NURSERYMEN'S EXCHANGE *v.* UNITED STATES

United States Custom Court, Third Division

(Decided November 21, 1958)

*Lawrence & Tuttle* (*George R. Tuttle, Jr., Frank L. Lawrence,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Richard E. FitzGibbon,* trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: These nine protests, consolidated for trial, have to do with merchandise described as "Tree Fern Totem Poles," imported from Japan and entered at San Francisco. The collector classified the merchandise under paragraph 1558 of the Tariff Act of 1930 as nonenumerated manufactured articles, not specially provided for, and he assessed duty at the modified rate of 10 per centum ad valorem.

Plaintiff's protests initially claimed, alternatively, classification either under paragraph 1558, as nonenumerated unmanufactured articles, not specially provided for, or under paragraph 1548, as peat moss, or under paragraph 1722, as an unmanufactured vegetable substance. On trial, defendant stating it had no objection, plaintiff amended its protests to include two additional alternative claims. These are claims under paragraph 1803, as sawed lumber, or under paragraph 1806, as sticks of wood, not specially provided for, "in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes." The only claim made in plaintiff's brief is that the instant merchandise is properly free of duty under paragraph 1806. This we deem tantamount to abandonment of the other four protest claims for various classifications under paragraph 1558, 1548, 1722, or 1803.

No evidence having been adduced or arguments advanced in support of any of those claims, they are overruled.

We proceed to consideration of plaintiff's sole remaining protest claim, which is for classification of this merchandise under paragraph 1806.

Plaintiff introduced the testimony of a single witness and also two exhibits. Exhibit 1 is a photograph depicting tree trunks, lying on the ground, from which the merchandise is cut. Exhibit 2 is a representative sample of the merchandise, identified as pieces cut from tree trunks such as the trunks pictured in the photograph of exhibit 1. The official papers were not put in evidence, but the parties stipulated "that the involved merchandise has only been cut into the sizes shown on the invoice by sawing the tree fern trunks into these sizes." Defendant introduced no proofs.

The merchandise sample which is in evidence has been cut both to length and longitudinally. The exterior is rough in texture. The interior, as exposed to view, has the appearance of a mass of interwined strands of hard vinelike matter, interspersed with other matter which somewhat resembles dry pine needles. The so-called pole is porous. It is dark brown in color. It is dry. Pieces break off, even under fairly careful handling. Counsel stipulated, as to exhibit 2, that while "one end has been frayed, * * * it is agreed that as imported, that end is not frayed; it's in a square shape." At the other end, also squared, the vinelike strands can be seen, bunched together in mass. The intertwined vinelike strands do not show continuous growth.

Dr. Robert A. Cockrell, professor of wood technology at the University of California, testified for the plaintiff that he is a graduate, with both the bachelor and master degrees, of the New York State College of Forestry. He received, in 1934, the Ph. D. degree of the University of Michigan, where he majored in wood technology. After work in industry, he has been, since 1936, a professor at the University of California. He teaches general forestry, tree identification, wood structure and identification, and the physical properties of wood.

Exhibit 2 comes from a plant which Dr. Cockrell said was a tree fern, of the pteridophytes fern group. The vinelike strands, massed in the body and tissue, are in no sense individual plants but are all part of the same plant body.

Dr. Cockrell said that he had examined exhibit 2 with a hand lens. The strands, he said, "are vascular bundles, consisting of masses of vascular tissue; in other words, wood." Asked whether it is wood similar to rattan or to oak, the witness stated:

No, it isn't, in the sense that these bundles are not incorporated in a firm matrix of parenchyma tissue. Nonetheless, this tree fern is a vascular plant and these

are vascular bundles and fit the definition of wood. The difference between this and bamboo, I think, is quite evident. Bamboo is a relatively continuous material; solid material. This is discontinuous, in the sense that these bundles are simply grown together in the formation of the material, but they're not embedded in the matrix of parenchyma tissue. (R. 8.)

Questioned on cross-examination as to whether "the whole thing" is wood, or is composed of strands of wood, Dr. Cockrell replied:

There's a pretty fine distinction. Yes, it's composed of strands of wood, and, hence, it is wood, in the sense it is an aggregate of strands of wood. (R. 10.)

As to whether the plant is a fern or a tree, on cross-examination the witness said:

It's a tree fern; it is a tree. Here's where you get into the definition of "tree," and the definition of a tree is simply that it's a woody plant with a persistent aerial stem that attains an appreciable height above the ground, and this fits the definition because by my interpretation here, these are vascular bundles; they're xylem, and hence, it is wood, and hence, it is a woody plant, and that's why it's called a tree fern in contrast to a tree that grows on the ground. (R. 11.)

Dr. Cockrell, in response to questions by the court, said that a piece would grow in nature like exhibit 2, that it was not interwoven by man, and that "this is the way" the wood grows together in the logs.

Our appeals court, in *Steinhardt & Bro. et al.* v. *United States*, 9 Ct. Cust. Appls. 62, held that raffia, a fiber derived from the raffia palm, is wood. Pertinent to the instant problem, is the following language from the opinion of the court in the *Steinhardt* case, after rehearing:

We think that lexicographers and common knowledge warrant us in saying that wood is a very broad term and includes not only material obtained from exogenous plants, but also like substances obtained from palms, from bamboo, which is a giant grass, and from some ferns which are herbaceous plants. (P. 66.)

We hold on the record before us that this merchandise is wood. But is it sticks of wood within the free entry provision of paragraph 1806?

The only evidence of record bearing directly on the issue as to whether these lengths of wood are sticks, is the uncontradicted testimony of Dr. Cockrell that they are sticks (R. 9). Defendant does not argue that they are not sticks.

It has been held that where bamboo and rattan have been split, and the split sections cut into lengths, the resultant articles are sticks. *United States* v. *Larzelere & Co.*, 6 Ct. Cust. Appls. 273; *United States* v. *Steeb & Co.*, 6 Ct. Cust. Appls. 275.

Sticks of tree fern wood are not specially provided for in the Tariff Act of 1930.

Plaintiff appears to contend, in the brief filed with us, that these sticks fall within both of the alternative provisions of paragraph 1806, that is, that they are sticks "in the rough" and also that they are "not

further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes." Defendant contends, quite rightly, that the record is barren of evidence that these sticks are suitable for any of the uses enumerated in paragraph 1806. Indeed, there is no evidence as to what, if anything, these sticks are suitable for, or as to the use or uses for which they were imported. It is self-evident, however, from a scrutiny of exhibit 2, that these articles are not suitable for sticks for umbrellas, sunshades, whips, fishing rods, or walking canes. Insofar as plaintiff's claim leans on the second alternative qualification in paragraph 1806, that of advancement to suitability for certain uses, the claim must be overruled.

It does not follow, as defendant argues, that plaintiff thereby has failed to make out any case under paragraph 1806. Defendant appears to ignore the fact that it is the disjunctive "or" and not conjunctive "and" which Congress inserted between the words "in the rough" and the subsequent provision which is chiefly discussed in defendant's brief. The word "or" signifies that Congress intended these to be alternatives, rather than a cumulative requirement. It is the intention of Congress which we are called upon to construe. Therefore, if these sticks of wood are *either* in the rough *or* not further advanced than is suitable for one of the enumerated uses, Congress has granted them free entry.

In *J. E. Bernard & Company, Inc.* v. *United States*, 41 Cust. Ct. 1, C. D. 2011, the merchandise was sticks cut from the giant reed, Arundo donax, described as "cane." The sticks had been cut sectionally to eliminate nodes or protuberances, for the purpose of determining the diameter and wall thickness of the reed. The court found that the cutting did not advance the sticks along the lines of their ultimate use or for any other use; hence, they were sticks of wood *in the rough* within the meaning of paragraph 1806.

Webster's New International Dictionary, second edition, ascribes to the phrase "in the rough" the following meaning: "In an unwrought or rude condition; unpolished; as, a diamond or a sketch *in the rough*." Unwrought is, obviously, the opposite, or negative, of wrought. Wrought is a term known to commerce, including such articles as wrought iron, wrought silver, etc.

It is not to be supposed that Congress was unfamiliar with common usage of the phrase *in the rough*, nor that Congress meant to say exactly what it had said elsewhere, but in different words. Cases construing such terms as "manufactured," "prepared," "processed," "dressed," etc., are not helpful.

There is before us, in exhibit 1, a photograph of the uncut tree trunks. There is, in exhibit 2, a specimen of the sticks. The parties

have stipulated of record that the involved merchandise has "only" been cut by sawing the tree fern trunks.

Cutting the tree fern trunks produced the sticks before us. That is all that was done. After the trunks became sticks, the sticks were not further advanced. If they are sticks of wood, and the record shows that they are, they are sticks of wood "in the rough."

Plaintiff has overcome the presumption of correctness that attaches to the collector's classification, by showing that the merchandise is wood, which is an article enumerated in many provisions of the Tariff Act of 1930. It is not a nonenumerated article. The claim to classification of these sticks of wood, under paragraph 1806, as being in the rough, is sustained.

Judgment will issue overruling all of plaintiff's protest claims except the claim under paragraph 1806, and sustaining that claim.