## RICO IMPORT CO.
### v.
## UNITED STATES.

C.D. 4138; Protest No. 67/47004–94742.

United States Customs Court,
First Division.
Dec. 3, 1970.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Herbert P. Larsen and Mollie Strum, New York City, trial attorneys), for defendant.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

This case presents the question of the proper classification, for customs duty

purposes, of certain sticks imported from Holland and France. The sticks are in their natural tubular shape, of varying lengths and diameters, and are manufactured into reeds for clarinets and saxophones. They have been classified by the customs officials as other articles, not specially provided for, of unspun fibrous vegetable materials under item 222.64 of the Tariff Schedules of the United States, and were therefore assessed with duty at the rate of 10 per centum ad valorem.

Plaintiff contends that the classification is erroneous, and that the articles are entitled to entry free of duty under either one of two allegedly applicable provisions of the Tariff Schedules of the United States. Specifically, plaintiff claims that the articles are entitled to free entry under item 222.05 of the tariff schedules as "bamboo or rattan sticks, in the rough", or alternatively, under item 200.40 of the tariff schedules as "wood sticks (except bamboo and rattan sticks), in the rough".

The pertinent provisions of the tariff schedules may be set forth as follows:

*Classified under:*
"Articles not specially provided for, of unspun fibrous vegetable materials:

\*　　\*　　\*　　\*　　\*　　\*　　\*

222.64  Other ................10% ad val."
Claimed under:
"222.05  Bamboo or rattan sticks, in the rough, or cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes ..................Free"
"200.40  Wood sticks (except bamboo and rattan sticks), in the rough, or cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes ....................Free"

The parties are in agreement that the articles in controversy are cut from a cane or reed that is properly called *arundo donax*. Not only have the parties stipulated that the merchandise is *arundo donax*, but it would seem clear that it is identical to the *arundo donax* merchandise that was in issue in two earlier cases brought under the

Tariff Act of 1930. One of these cases is Rico Products Co. et al. v. United States, 44 Cust.Ct. 100, C.D. 2159 (1960), and, on plaintiff's motion, the record of the *Rico Products Co.* case, and certain exhibits therein, have been incorporated into the record of the case at bar. The other case is J. E. Bernard & Company, Inc. v. United States, 41 Cust.Ct. 1, C.D. 2011 (1958), and it should be noted that the record of the *J. E. Bernard & Company* case had been incorporated in the *Rico Products Co.* case. Thus, the case presently before the court contains the records of two prior cases, each of which pertains to *arundo donax*. More particularly, plaintiff's exhibit 1 in the *J. E. Bernard & Company* case, was offered as plaintiff's exhibit 1 in the *Rico Products Co.* case, and the record shows that the exhibit, the merchandise in issue in those cases, is *arundo donax* cane representative of the articles in the case presently before the court. Clearly, therefore, portions of the judicial opinions of those cases which describe the merchandise are germane to the case at bar, and may conveniently be reproduced herein.

In the *Rico Products Co.* case this court summarized the evidence pertaining to the nature of the sticks, and what had been done to them prior to importation, by quoting the following from the *J. E. Bernard & Company* case:

"According to the evidence, the source of the imported merchandise is a giant reed, Arundo donax, grown in France. This reed grows to considerable height and tapers from the bottom to the top, where there are a few stems with a sort of a flower. At intervals of 6 to 12 inches, there are on the stem of the reed what are called nodes, seemingly similar to those found in bamboo stems. The reed is hollow, except at the nodes, which divide it into sections.

"In reaching the condition of the merchandise imported, the reed is first harvested and then 'stripped,'

presumably meaning that the top stems and flower and the skin or bark are taken off. It is then sawed or cut sectionally, so that the result is a number of tubes, varying in length from 6 to 12 inches, represented by plaintiff's exhibit 1. The nodes are entirely cut off, as exhibit 1 does not show any sign of their presence. The pieces are then allowed to dry and season in the air, after which they are sorted into two diameter sizes, one being up to 24 millimeters in diameter and the other from 24 to 27 millimeters. The record indicates that there is also a specification as to the thickness of the wall of the reed pieces. They are then packed in sacks and exported to the United States, and, after importation, they are used in the manufacture of reeds for musical instruments." 44 Cust.Ct. at 101–102.

It is to be noted, however, that although the previous cases also dealt with *arundo donax*, the merchandise of the case at bar, those cases were decided under the Tariff Act of 1930. They were not decided under the pertinent provisions of the Tariff Schedules of the United States which govern the present importations. In those cases the question presented was whether the sticks were "in the rough", and therefore entitled to free entry under the provisions of the Tariff Act of 1930. The *J. E. Bernard & Company* case held that they were.

In the *Rico Products Co.* case, the question was whether the more detailed evidence, as to what was done to the sticks from the condition in which the cane or reed is found in nature to the condition in which they were imported, warranted a departure from the holding in the *J. E. Bernard & Company* case. In the *Rico Products Co.* case the defendant contended that the operations of stripping the bark, topping the unwanted leaves and branches, seasoning and curing, denoding, and sorting took the sticks out of the purview of the tariff act provisions which covered "sticks * * * in the rough". The

court did not agree, and held that the processes to which the sticks had been subjected did not advance them from the rough state. The court, in sustaining the protests, indicated that neither the evidence nor the decisions cited warranted a departure from the holding of the *J. E. Bernard & Company* case. Since the merchandise in both cases was admittedly identical, i. e., hollow or tubular sticks, the court held that none of the operations or processes to which they had been subjected constituted an advancement or manufacture of the merchandise so as to take it out of the category of sticks "in the rough".

After citing and discussing these and other pertinent cases, plaintiff, in its brief, in the case at bar, states:

"Neither the facts nor the pertinent law have changed since 1960. The merchandise at bar is identical to the *Arundo donax* tubes in C.D. 2159 [the *Rico Products Co.* case], and the successor TSUS does not require an inconsistent interpretation of the phrase 'in the rough'. The prior decisions referred to herein are *stare decisis* of this preliminary issue." (Plaintiff's brief, p. 18)

The statement may be true insofar as the meaning of the words "in the rough" is concerned. For present purposes it may very well be assumed that the two earlier cases are dispositive of the issue whether the sticks qualify as sticks "in the rough". Since the words "in the rough" are used in the present provisions of the tariff schedules, that succeeded the Tariff Act of 1930, plaintiff would seem to be correct in its assertion that "there is nothing" in the tariff schedules that would suggest "a different holding under the present tariff provisions." The construction of the words "in the rough", however, is not the question presented for adjudication in the case at bar. A more accurate statement is set forth elsewhere in plaintiff's brief where it is stated that:

"The present Tariff Schedules do present in this case additional ques-

tions not squarely reached in the two earlier 1930 Act cases. That is, whether *Arundo donax* sticks are classifiable as bamboo, as wood, or as articles not specially provided for, of unspun fibrous vegetable materials." (Plaintiff's brief, p. 2)

Clearly, therefore, whereas the prior cases raised and resolved the issue that the particular state of advancement of the sticks did not remove them from the category classifiable as sticks "in the rough", those cases did not deal with the nature of the sticks themselves.

In both those cases, the sticks were referred to generally as either "reed" or "cane". In view of the then applicable provision of the Tariff Act of 1930, there was "no dispute between the parties that the merchandise [consisted] of wood, or that it [was] in the form of sticks." 41 Cust.Ct. at 2. The precise nature of the sticks was neither pertinent nor examined because paragraph 1806 of the Tariff Act of 1930 specifically enumerated within its classification for "woods" a variety of sticks including "bamboo" and "rattan". The issue there was whether the sticks were "sticks * * * in the rough", and therefore entitled to free entry, or "wood, unmanufactured, not specially provided for", and therefore dutiable at the rate of 10 per centum ad valorem 44 Cust.Ct. at 101. The entire thrust of the cases related to whether the sticks were "in the rough".

Clearly, the case at bar raises the wholly new issue whether the sticks are "bamboo or rattan sticks", "wood sticks", or "articles not specially provided for, of unspun fibrous vegetable materials". They have been classified as "articles not specially provided for, of unspun fibrous vegetable materials" under item 222.64 of the tariff schedules. Plaintiff asserts that they have been erroneously classified since the sticks should have been classified either under item 200.40 as "wood sticks", or under item 222.05 as "bamboo or rattan sticks".

A comparison of the statutory provisions applicable to all of these cases, where the merchandise in issue consisted of *arundo donax*, will reveal at least one essential difference that sheds considerable light upon the legislative intent underlying the tariff schedules. Whereas paragraph 1806 of the Tariff Act of 1930 specifically included in the general category of "woods", such items as "bamboo" and "rattan", the present tariff schedules contain a separate tariff item for "bamboo or rattan sticks, in the rough". Furthermore, not only are "bamboo or rattan sticks" provided for separately in item 222.05, but they are expressly excepted from item 200.40 which covers "wood sticks (except bamboo and rattan sticks), in the rough". There can, therefore, be no question that the present tariff schedules established a specificity of enumeration and classification that did not exist under the Tariff Act of 1930.

It is a matter of legislative history that the former classification, under the Tariff Act of 1930, was a "loose" one based on "common names" and "caused classification problems." Hence, in order to settle or resolve the difficulties that prevailed under the Tariff Act of 1930, the tariff schedules employ botanical terms. The legislative purpose sought to be achieved in the tariff schedules is clearly set forth in the following statement in the Tariff Classification Study, Explanatory and Background Materials (1960), Schedule 2, Part 1 at page 11:

"In the present tariff act some of the rate descriptions are based upon the common names of various types of wood. The common names applied to wood are frequently used rather loosely, and this, at times, has caused classification problems. In the proposed schedules, this matter has been settled by the use of botanical names to supplement the common names and thereby provide certainty to the proposed provisions."

In ascertaining the nature of the merchandise in issue, the court, in addi-

tion to the testimony of the witnesses who testified in the case at bar and in the incorporated cases, has examined several lexicographic and encyclopedic sources. Few would disagree that the imported hollow tubes, stipulated to be *arundo donax*, are cut from a reed. The 1970 edition of *Encyclopaedia Britannica,* in volume 19 at page 35, states that reed is "a term applied to several distinct species of large, water-loving grasses." A species of reed, states the *Encyclopaedia Britannica,* is *arundo donax,* and is described as "the largest European grass (6 to 12 ft. high), which is abundant in Europe." In volume 10 of the 1970 edition of the *Encyclopaedia Britannica* at page 697, there is found an illuminating article on grasses. It is stated that grasses "may be recognized and readily distinguished from members of other plant families by the following structural features. The stems are jointed, hollow as in wheat or oats, or pithy as in maize, sugar cane and sorghum. The leaves are alternate in two ranks, and consist of two parts, the sheath and the blade. The sheath surrounds the stem like a tube but is usually open along one side, and the blade is more or less divergent." An illustration, also found on page 697 and entitled "Fig. 1—Internode of a grass culm with its leaf (blade and sheath)", contains arrows which indicate the location of the nodes. The textual explanation states that "the upright stems (clums) of grasses are usually cylindrical (rarely flattened) and conspicuously jointed. The nodes are always solid, whereas the internodes (Fig. 1) are commonly hollow * * *."

It would seem clear that the various descriptions of the controverted merchandise given by all of the witnesses, either in the case at bar, or in the incorporated cases, conform substantially with what is stated in the *Encyclopaedia Britannica* about grasses. This ought not to be surprising for there can be no doubt that *arundo donax* is a "water-loving grass". An examination of the testimony of the witnesses who testified in the case at bar, and in the incorporated cases, will reveal that, notwithstanding differences of opinion as to the proper classification of *arundo donax,* all seemed to agree that it was a "grass" or a "tall grass". Indeed, a professor of forestry who testified for the plaintiff and asserted that, in his opinion, *arundo donax* was "wood", admitted in cross-examination that it is "in the grass family". He gave the following reasons why in his judgment *arundo donax* is wood:

> "Because it consists predominantly of vascular tissue. It is a monocot. It consists of vascular bundles. These are connected in this case in a matrix of parenchyma tissue, but the tissue is predominantly these various bundles, and hence that would fit the definition of wood."

This witness testified that although "superficially" there are no differences between bamboo and *arundo donax,* he was sure that botanically "there are differences." He also stated that botanically "they are both in the grass family." In his opinion, bamboo was also wood because "it consists predominantly of vascular bundles." This witness stated that wood was synonymous botanically with the term xylem and that practically all vascular plants had some xylem. In answer to the question whether anything that had xylem was wood, he replied: "That is wood."

The defendant called, as its expert, an assistant professor of biology who taught botany and plant anatomy. He testified that the *arundo donax* exhibit introduced by the plaintiff in the case, is not "wood" but a grass. The witness stated that wood has a secondary growth which increased the amount of vascular tissue. In *arundo donax,* some cells become lignified and thereby make the plant rigid. The amount of vascular tissue, however, is still considered primary and not secondary. In answer to a question by the court, the witness answered categorically that neither plaintiff's exhibit, the *arundo donax,* nor defendant's exhibit "A", admittedly

a grass, contained any "secondary xylem". "Wood," stated the witness, "is that secondary growth that has occurred which would increase the amount of vascular tissue, typical of our commercial woods, where we have a lot of secondary xylem production, and this is really considered to be wood."

The witness explained that vascular cambium is required to produce the secondary xylem that makes wood. Plaintiff's exhibit, the *arundo donax* in question, is not wood, but is rigid because the walls had produced a layer of lignin, "and this makes them [some plants] very rigid."

Defendant's expert stated that *arundo donax* is a fibrous vegetable material "of the poaceae tribe of the gramineae." He knew that plaintiff's exhibit, the *arundo donax*, had no secondary growth, "because this is one of the main characteristics that separates the monocots, of which the grass is a monocot, from our dicotyledonous plants * * *." He replied categorically that there could be no difference of opinion as to whether "there is any secondary growth on *Arundo donax*." He explained that there is additional growth, but that secondary growth implies or means that there is a "vascular cambium that produces this growth." In cross-examination he testified that wood is a term used in plant anatomy and that it means "vascular tissue produced from a vascular cambium", and for this reason plaintiff's exhibit "is not wood." For similar reasons he also testified that bamboo is not wood.

The case at bar, as well as the incorporated cases, contains testimony of sufficient probative value to warrant the conclusion that *arundo donax* is a grass and not wood. Not only have the witnesses in all of these cases agreed that *arundo donax* is of the "grass family", but some witnesses for the plaintiffs have expressly indicated that it is not wood. For example, in the *J. E. Bernard & Company* case not only is there testimony that *arundo donax* is

not wood, but there is also testimony that it is neither rattan nor bamboo.

An examination of the lexicographic definitions and descriptions of *arundo donax*, as well as the testimony in the cases before the court, warrants a finding that it is a grass and not wood. The description found in the *Encyclopaedia Britannica* not only conforms with the testimony of practically all of the witnesses, but it is also particularly descriptive of the hollow tubes or sticks before the court.

Plaintiff, in its brief, states that the "strict botanic view of wood" as expressed by defendant's expert, "is inapposite to the interpretation of the term in the tariff laws of this country since at least the beginning of this century." (Plaintiff's brief, p. 21) It asserts that the "view that wood is produced only in dicotyledonous plants was specifically rejected" in Steinhardt & Bro. et al. v. United States, 9 Ct.Cust.App. 62, 64, 66, T.D. 37940 (1919), and quotes the following paragraphs from that case:

"In common parlance wood is the tough, hard substance of all trees and shrubs, and it includes not only the hard fiber bundles of trees and shrubs in general but also the tougher fibrous components of some herbaceous plants."

* * * * * *

"We think that lexicographers and common knowledge warrant us in saying that wood is a very broad term and includes not only material obtained from exogenous plants, but also like substances obtained from palms, from bamboo, which is a giant grass, and from some ferns which are herbaceous plants. Indeed, bamboo and rattan, which is a specie of climbing palm, were classified under paragraph 700 of the act of 1897 as wood. Tuska v. United States (1 Ct.Cust.Appls., 335–336)."

There can be no quarrel with judicial decisions of another day applying and construing a different statute. Were the Congress to state that, for tariff

purposes, *arundo donax,* bamboo or rattan is dutiable under a provision for "wood" or "woods", the legal problem presented for adjudication would vanish. The *Steinhardt & Bro.* case cited was a rehearing of Steinhardt & Bro. et al. v. United States, 8 Ct.Cust.App. 404, T.D. 37646 (1918), and involved silk-lined baskets composed of raffia, wood, cane and willow. They had been classified by the collector of customs as manufactures in chief value of silk under paragraph 318 of the Traffic Act of 1913 which pertained to "woven fabrics, * * * and all manufactures of silk", and were assessed duty at the rate of 45 per centum ad valorem. The importers claimed that the baskets were in chief value of bamboo, wood, straw, compositions of wood, or of like materials under paragraph 175 of the Tariff Act of 1913 which provided for duty at the rate of 25 per centum ad valorem.

Paragraph 175 of the Tariff Act of 1913 read as follows:

> "Blinds * * * in chief value of bamboo, wood, straw, or compositions of wood * * * and baskets in chief value of like material, 25 per centum ad valorem."

At the rehearing, the appellate court asked whether it could be said that "the raffia fiber of which the baskets are made in part is a wood *as that term is used in paragraph 175?*" 9 Ct.Cust. App. at 64. [Emphasis added.] The government urged adherence to a botanical definition of the term "wood", and would have limited its application to "the product of exogenous trees or shrubs and to that part of such trees and shrubs which lies between the pith and the bark."

In reversing the decision of the Board of General Appraisers, and adhering to its original decision, the Court of Customs Appeals gave the term "wood" a "more comprehensive meaning than that accorded to it by the Government", found that raffia was a "wood" and held that the baskets were "in chief value of * * * wood"

under paragraph 175 of the Tariff Act of 1913.

Surely the paragraph of the Tariff Act of 1913, before the court in the *Steinhardt & Bro.* case, contains none of the specificity of enumeration found in the Tariff Schedules of the United States. The old paragraph applied by the court in the *Steinhardt & Bro.* case lumped together "bamboo, wood, straw or compositions of wood." It is illustrative of the "loose" classification that formerly prevailed. See Nurseryman's Exchange v. United States, 41 Cust.Ct. 223, 225, C.D. 2044 (1958), wherein merchandise invoiced as "Tree Fern Totem Poles", which had only been cut by sawing "tree fern trunks", under paragraph 1806 of the Tariff Act of 1930 was held to be free of duty as "sticks of wood, not specially provided for, in the rough". As indicated previously, in order to settle classification problems, the tariff schedules now use "botanical names to supplement the common names and thereby provide certainty to the proposed provisions." Also under the present schedules, bamboo and rattan sticks are expressly excepted from "wood sticks".

In view of the present record, which highlights botanical structural differences between *arundo donax* and wood, it is ineffectual to urge upon the court judicial authority based upon a "loose" and different statutory scheme. Since the case at bar raises a novel question pertaining to the proper tariff classification of *arundo donax* under the tariff schedules, there is really no judicial authority on the legal question presented.

Plaintiff, in its brief, refers to works of popular or general circulation to which the court may look for guidance in determining the common meaning of the word "wood". It sets forth the definition found in Webster's Third New International Dictionary (1965), Funk & Wagnalls New Standard Dictionary (1960) and the Random House Dictionary of the English Language (1966). It is to be noted that all

of the definitions refer to trees or shrubs. All likewise refer to either "xylem", "xylem elements" or "xylem portions". It is beyond dispute that "*arundo donax*" is neither a tree nor a shrub. In the words of defendant's expert, it does not contain the vascular cambium that is necessary "to produce the secondary xylem that makes wood." In the article on "wood", in volume 23 of the 1970 edition of the *Encyclopaedia Britannica*, like the 1966 edition thereof, it is stated at page 639 that "technically it [wood] is referred to as xylem."

The evidence is overwhelming that *arundo donax* is a grass, or a reed that is grass. Defendant's expert characterized it as a "fibrous vegetable material" " * * * of the poaceae tribe of the gramineae." Webster's Third New International Dictionary, Unabridged, indicates that etymologically *poa* is new Latin from the Greek for grass, and defines the word as "a genus of grasses", and "any grass of the genus *Poa*." All of the sources examined support the statements of defendant's expert that *arundo donax* is not wood. Not only does it not have secondary xylem, but it is hollow and does not have annual rings as do trees. Indeed, it is clear, even from the testimony of plaintiff's expert, that the growth that occurs in *arundo donax* is definitely "unlike the growth in trees like pine or oaks." See discussion of cambium, secondary growth and secondary vascular tissues in article on plant science in volume 17 of the 1970 edition of the *Encyclopaedia Britannica* at pages 1204–1205. See also discussion of the "physiology of forest trees" in Patterson v. McCausland, 3 Bland 69, 75 (Md.1830) decided by the High Court of Chancery of Maryland.

Plaintiff, in its brief, asserts that the "specific exception of bamboo and rattan sticks from the coverage of item 200.40 most probatively demonstrates that the understanding of Congress was that wood was to continue to include merchandise commonly understood to be 'wood,' whatever its botanical family might be." (Plaintiff's brief, p. 23) The court cannot agree. Such a construction of the tariff schedules would not only disregard the statement of the Tariff Commission pertaining to the use of botanical names, but would also ignore the specificity of enumeration found in the schedules.

The court also can see no merit in plaintiff's references to the *Brussels Nomenclature*. In the light of the existing clear indications of congressional intent, whether Congress followed or failed to "follow the influence of the *Brussels Nomenclature*" in the pertinent provisions of the schedules is a matter that need not be pursued. Suffice it to say that the *Brussels Nomenclature* specifically refers to *arundo donax* in the subheading for reeds in the category of vegetable materials as follows:

"14.01—Vegetable materials of a kind used primarily for plaiting (for example, cereal straw, cleaned, bleached or dyed, osier, reeds, rushes, rattans, bamboos, raffia and lime bark)."

\* \* \* \* \* \*

"(2) Reeds and rushes, collective terms applied to many herbaceous plants which grow in damp places, both in Europe and in the tropics. Reeds generally have the more rigid stalks or stems, straight and hollow, with knots at fairly regular intervals, marking the place of the leaves. The best known varieties include water rushes (*Scirpus lacustris*); common and wild reeds (*Arundo donax* and *Phragmites communis*); \* \*."

Additionally, it may be indicated that the *Brussels Nomenclature* also lists bamboo separately. It follows the above quoted provision for reeds and rushes as follows:

"(3) Bamboos, special varieties of grasses, which grow profusely in tropical regions and particularly in China, Japan and India.

Bamboos have a very light, shiny, generally hollow stalk, in some cases with a groove between alternate pairs of nodes."

Surely no support can be found in the provisions of the *Brussels Nomenclature* for the proposition that *arundo donax* is wood. It confirms what all other sources have demonstrated that *arundo donax* is a reed and an herbaceous plant. On the record herein presented, the court must find that *arundo donax* is a grass or of the grass family and does not meet or satisfy the test of what is wood.

Although plaintiff has claimed alternatively that *arundo donax* is bamboo, it must be stated that there is no testimony in the record that would warrant such a finding. Although *arundo donax* and bamboo are both of the grass family, even plaintiff's expert testified that "botanically I am sure there are differences." All that he could state was that "they are both in the grass family." Since there are grasses that are neither *arundo donax* nor bamboo, plaintiff cannot claim that *arundo donax* is bamboo merely because it is of the grass family. As stated by one of plaintiff's witnesses in the *J. E. Bernard & Company* case, *arundo donax* is neither bamboo or rattan. That witness testified that it is not wood but a cane, fibrous in nature, and of the grass family. In view of the total failure of proof that *arundo donax* is bamboo, plaintiff's claim for classification of the articles in question under item 222.05 of the tariff schedules is unfounded and without merit.

The imported merchandise, consisting of *arundo donax* sticks, was classified as "unspun fibrous vegetable materials" and plaintiff does not deny that it is an unspun fibrous vegetable material. The merchandise is neither wood nor bamboo as urged by plaintiff, and therefore cannot be classified under the provisions of the tariff schedules urged by the plaintiff. Since the merchandise at bar, consisting of *arundo donax sticks*, was properly classified under item 222.64 of the tariff schedules, plaintiff's claims are without merit.

Since the plaintiff has not borne its burden of proof in establishing that the contested classification is erroneous, and that either of the claimed classifications is correct, the protest is overruled. Judgment will issue accordingly.