60 CCPA
**RICO IMPORT COMPANY, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5453.**

United States Court of Customs
and Patent Appeals.

Nov. 30, 1972.

Glad & Tuttle, Los Angeles, Cal., attorneys of record, for appellant; Robert Glenn White, Los Angeles, Cal., of counsel.

Harlington Wood, Jr., Asst. Atty. Gen., Alan S. Rosenthal, Eloise E. Davies, Civil Division, U. S. Department of Justice, Washington, D. C., for the United States.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This appeal by Rico Import Co. involves the importation of tubular sections of the *arundo donax* plant which are used in the manufacture of reeds for musical instruments. The goods were classified as articles of "unspun fibrous vegetable materials" under item 222.64 of the Tariff Schedules of the United States. (TSUS), dutiable at 10 per cent ad valorem. Appellant importer protested this classification and claimed that the merchandise should have been classified under item 200.40 as "wood sticks (except bamboo and rattan sticks) in the rough" or, alternatively, under item 222.05 as "bamboo or rattan sticks in the rough." Merchandise in both of these categories is accorded entry duty free.

The Customs Court held [1] that *arundo donax* is neither wood nor bamboo but a species of water-loving grass and that the tubular sections, though in the rough, were properly classifiable under

---

1. 65 Cust.Ct. 554, C.D. 4138 (1970).

item 222.64. The issue to be resolved is whether the Customs Court was correct in so holding. .

The statutes involved are:

Tariff Schedules of the United States—Schedule 2:

Part 1. Wood and Wood Products, Subpart A:

200.40 Wood sticks (except bamboo and rattan sticks), in the rough, or cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes ...................... Free

Part 2. Subpart B: Bamboo, Rattan, Willow and Chip; Basketwork, Wickerwork, and Related Products of Fibrous Vegetable Substances

222.05 Bamboo or rattan sticks, in the rough, or cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes .................. Free

........................................

Articles not specially provided for, of unspun fibrous vegetable materials:

222.60 Of one or more of the materials bamboo, rattan, willow or chip ........ 25% ad val.

222.62 Of raffia ............. 8.5% ad val.

222.64 Other ................. 10% ad val.

........................................

Headnote, Subpart B(2)(d): the term "unspun fibrous vegetable materials" means bamboo, rattan, willow, chip, straw, palm leaf, grass, seagrass, and similar fibrous vegetable substances which have not been spun.

Paragraph 1806, Title II, section 201, Tariff Act of 1930—

Woods: Sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, india malacca joints, and other woods not specially provided for, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

In the proceedings below, the parties agreed that the articles in question are cut from the European plant *arundo donax* and were "in the rough" as imported in that they had not been subjected to any part of the manufacturing process that would convert them into reeds for musical instruments. It was stipulated that the tubular sections of *arundo donax* here in issue are the same merchandise as that involved in two ear-lier cases, viz., Rico Products Co. et al. v. United States, 44 Cust.Ct. 100, C.D. 2159 (1960) and J. E. Bernard & Co. v. United States, 41 Cust.Ct. 1, C.D. 2011 (1958). The records of those cases were incorporated in the present record over appellee's objection that those cases were inapposite since they had been decided under a different tariff law (Title II, section 201, paragraph 1806 of the Tariff Act of 1930) and involved the question of whether the tubular sections were "sticks in the rough" or had been partially subjected to the finishing process that would convert them into reeds for musical instruments.

■ It is pertinent to observe that appellant's exhibit 1 in the instant case was the same one that had been used in the *Rico Products Co.* and the *J. E. Bernard & Co.* cases. Therefore, we agree with the Customs Court that portions of its opinions in those cases are germane to this case. That court adopted below its summary of the evidence pertaining to the nature of *arundo donax* and the processing steps done to it before importation set forth in the *J. E. Bernard Co.* case. The court observed, correctly we think, that the *Rico Products* and *J. E. Bernard Co.* decisions were not dispositive of the issue as to whether *arundo donax* is wood, grass or bamboo. The court stated:

Clearly, therefore, whereas the prior cases raised and resolved the issue that the particular state of advancement of the sticks did not remove them from the category classifiable as sticks "in the rough", those cases did not deal with the nature of the sticks themselves.

In both those cases, the sticks were referred to generally as either "reed" or "cane". In view of the then applicable provision of the Tariff Act of 1930, there was "no dispute between the parties that the merchandise [consisted] of wood, or that it [was] in the form of sticks." * * * The precise nature of the sticks was neither pertinent nor examined because

paragraph 1806 of the Tariff Act of 1930 specifically enumerated within its classification for "woods" a variety of sticks including "bamboo" and "rattan". The issue there was whether the sticks were "sticks * * * in the rough", and therefore entitled to free entry, or "wood, unmanufactured, not specially provided for", and therefore dutiable at the rate of 10 per centum ad valorem. * * * The entire thrust of the cases related to whether the sticks were "in the rough".

Therefore, in the instant appeal we are confronted with a new and different issue calling for a determination of whether the sticks are "bamboo or rattan sticks," or "wood sticks," or "articles not specially provided for, of unspun fibrous vegetable materials."

Dr. Robert Cockrell, a professor of forestry at the University of California at Berkeley, testified on behalf of the importer as to the nature of *arundo donax*. He stated that *arundo donax* is "wood" as that term is defined in Van Nostrand's Scientific Encyclopedia, Third Edition, 1958, to include "woody plants * * * in which the stem is predominantly composed of vascular tissue."[2] He would classify bamboo as a wood and noted that *arundo donax* and bamboo are so similar in their characteristics that without laboratory analysis one is almost impossible to distinguish from a similar section of the other. He also stated that bamboo and *arundo donax* are both members of the grass family, but that there are, nonetheless, botanical differences.

Dr. Cockrell characterized as a "straw" a stem of common grass—like the "grass you mow on Saturday,"

which was offered in evidence by the United States. He said, however, that it contained "some xylem[3] * * * which is in the general sense, wood." When asked to delineate the transformation point at which a plant would cease to be "grass" or "straw" and become "wood," he observed: "Wood, as we think of it, has to have substance so that it can be worked with tools, and these stems of Arundo donax can be worked with tools, but I suppose with microtools you can work that stem of grass, but in a generic sense this is not my idea of wood." It appeared to be the view of Dr. Cockrell that it is the quantity of xylem or woody substance in a plant that is determinative of whether it can be denominated "wood" and not the species or botanical origin. By way of illustration, he pointed out that rosewood and the common bean plant are from the same legume family, but the former is "a pretty hard wood" and the latter a succulent plant. In his view, both the *arundo donax* and appellee's sample of common grass are members of the grass family, but one is "woody"— hence in the generic sense, "wood"—and the other is not "wood" but "straw." The witness stated that all woods, as well as grasses, are unspun fibrous vegetable material.

In rebuttal to the defense witness, Dr. Cockrell stated that, in his opinion, the mere fact that *arundo donax* becomes lignified[4]—whereas common grasses do not—makes it "wood," because wood is lignified vascular tissue. He conceded, however, on cross-examination that the growth in girth of the stem by the addition of lignified vascular tissue, which occurs in such plants as palms, bamboo and *arundo donax*, is entirely different

2. *Vascular*, in a botanical sense, refers to the vessels or tubes that conduct the sap of plants. Webster's Third International Dictionary (Unabridged Edition, 1966).

3. *Xylem* is defined in Funk & Wagnalls New Standard Dictionary (1937 Unabridged Edition) as "the portion of a vascular bundle that is made up of woody tissue, that is tracheal tissue, wood-parenchyma, wood-cells, etc."

4. *Lignified*: converted into woody tissue by the addition of *lignin*, a substance related to cellulose that together with cellulose forms the woody cell walls of plants. Webster's Third International Dictionary (Unabridged Edition, 1966).

from the secondar growth that occurs in trees such as pines and oaks which have a continuous (solid) cambium layer.[5]

However, with regard to the botanical nature of wood, the court below found persuasive the testimony of Dr. Frank J. Alfieri, assistant professor of biology at California State College at Long Beach and witness for appellee, to the effect that wood is found in plants that produce secondary xylem. That court observed:

> The defendant [appellee] called, as its expert, an assistant professor of biology who taught botany and plant anatomy. He testified that the *arundo donax* exhibit introduced by the plaintiff in the case, is not "wood" but a grass. The witness stated that wood has a secondary growth which increased the amount of vascular tissue. In *arundo donax,* some cells become lignified and thereby make the plant rigid. * * * "Wood", stated the witness, "is that secondary growth that has occurred which would increase the amount of vascular tissue, typical of our commercial woods, where we have a lot of secondary xylem production, and this is really considered to be wood."

The witness explained that vascular cambium is required to produce the secondary xylem that makes wood. Plaintiff's exhibit, the *arundo donax* in question, is not wood, but is rigid because the walls had produced a layer of lignin, "and this makes them [some plants] very rigid."

Defendant's expert stated that *arundo donax* is a fibrous vegetable material "of the poaceae tribe of the gramineae." He knew that plaintiff's exhibit, the *arundo donax,* had no secondary growth, "because this is one of the main characteristics that separates the monocots, of which the grass is a monocot, from our dicotyledonous plants * * *." He replied categorically that there could be no difference of opinion as to whether "there is any secondary growth on Arundo donax."

Furthermore, in the incorporated *Bernard* case, Thomas Naylor, the ultimate importer of the merchandise, testified on behalf of the plaintiff that *arundo donax* is not wood but "a giant cane" which does not have the characteristics of wood, and is neither bamboo nor rattan but "more of the grass family." Also in that case Tony Ciccone, who manufactured the imported *arundo donax* into reeds for musical instruments, agreed that the plant could be described as a "tall grass." Their testimony is consistent with that of appellee's witness, Dr. Alfieri, that *arundo donax* is not wood but a grass because it lacks the secondary xylem that is characteristic of wood. As the court below noted, the testimony of the witnesses is consistent with the description of *arundo donax* in the Encyclopaedia Britannica (1970 edition, vol. 19, p. 25) as "the largest European grass (6 to 12 ft. high), which is abundant in Europe."

■ We are satisfied from this record that appellant has failed to bear the dual burden of showing (1) that the collector's classification of the merchandise as unspun fibrous vegetable material under item 222.64 was inappropriate and (2) the correctness of the claimed classifications. In reaching this decision we have considered Steinhardt & Bro. v. United States, 9 Ct.Cust.App. 62, T.D. 37940 (1919). In that case it was held that "wood" is not limited to a product obtained from exogenous plants but can also be obtained from endogenous plants. *Arundo donax* is, of course, an endogenous plant. However, that case was decided under a statute different from the one applicable here. We are in agreement with the Customs Court that the instant case, as well as the incorporated cases, reflects evidence

---

5. *Cambium*: a thin formative layer between the xylem and phloem [bark] of most vascular plants that gives rise to new cells and is responsible for secondary growth. Webster's Third International Dictionary (Unabridged Edition, 1966).

of sufficient probative significance to warrant the conclusion that *arundo donax* is a grass and not wood. That decision is in accordance with what appears to us to be a clear legislative intent to separately classify "wood" and "fibrous vegetable material" of the type set forth in subpart B of schedule 2 which headnote 2(d) to subpart B defines as "bamboo, rattan, willow, chip, straw, palm leaf, grass, sea grass, and *similar* fibrous vegetable substances, which have not been spun." (Emphasis added.) *Arundo donax* is clearly similar to the enumerated types.

We have considered the arguments and briefs of counsel and are not persuaded of reversible error in the decision of the court below. Therefore, the judgment overruling the protest is affirmed.

Affirmed.

LANE, Judge, dissenting, with whom BALDWIN, Judge, joins.

I respectfully disagree with the majority conclusion that *arundo donax* should be classified, for *tariff* purposes, as unspun fibrous vegetable material rather than wood. From a botanical standpoint alone, the majority's review of the evidence and its conclusion would appear to be valid. However, the majority opinion fails to adequately consider appellant's contention that:

[T]he lower court made a fundamental error in law in interpreting the tariff term for "wood" in a strict scientific, botanical, and technical sense when there is a complete absence of supporting evidence of any such legislative intent as to the meaning of the generic term "wood," and the common meaning of the term as long-established by judicial precedence is contrary to that scientific, botanical and technical interpretation.

In Nylos Trading Co. v. United States, 37 CCPA 71, 74, 81, C.A.D. 422 (1949), this court held that:

Tariff acts are not drafted in the language of science, and even though imported merchandise would fall within the term of the tariff act if considered as scientific terminology, such a classification would not be proper for customs purposes unless the scientific meaning coincided with the common meaning or commercial designation. * * * Where the scientific meaning of a term differs from the common meaning, expert testimony as to the scientific meaning has no probative value. Testimony as to the common meaning itself is only advisory, as the court may take judicial notice of such meaning.

\* \* \* \* \* \*

The scientific or botanical classification established by appellant is, of course, of no probative value where that classification differs from the common or commercial understanding of the term.

See also Hummel Chemical Co. v. United States, 29 CCPA 178, 183–84, C.A.D. 189 (1941); Meyer & Lange v. United States, 6 Ct.Cust.Appls. 181, 182 (1915).

It is my view that the court below erroneously resolved the present controversy on the basis of the scientific or botanical meaning of wood and on the expert testimony which, as a whole, appears to lead to the conclusion that from the botanical viewpoint, *arundo donax* cannot be considered, technically, to be a wood. The Customs Court justified this approach by a finding that it was the intention of the legislature in passing the 1962 Tariff Schedules to use botanical definitions. That court quoted the following from the 1960 Tariff Classification Study as evidence of that intent:

In the present tariff act some of the rate descriptions are based upon the common names of various types of wood. The common names applied to wood are frequently used rather loosely, and this, at times, has caused classification problems. In the proposed schedules, this matter has been settled by the use of botanical names to supplement the common names and there-

by provide certainty to the proposed provisions.

The Customs Court interpreted that language more broadly than I believe is reasonable and proceeded on the apparent assumption that *all* botanical classifications, including the generic term "wood," are to be read in light of technical definitions.

The recited portion of the Tariff Classification Study merely explains why the TSUS contains parenthetical references to botanical designation alongside common name classification descriptions in *some* cases. For example, item 202.03 provides for lumber, softwood, and, particularly, "Spruce (*Picea* spp.)." Such parenthetical insertions appear throughout items 202.03–202.62 in this form— common name followed by botanical specification. In short, the TSUS demonstrates precisely what was meant by the Tariff Classification Study. Botanical designation is given *to supplement* the common name classifications of species of wood *in those cases* where any confusion regarding the meaning of the common names was anticipated.

No botanical designation or definition is parenthetically inserted next to the common generic name "wood" in the Tariff Schedules. There is, therefore, no evidence that the meaning of wood was intended to be assessed on a technical or a scientific basis. It follows that the well-settled rule of interpreting classification on the basis of common, rather than scientific, meaning applies.

The predecessor of this court had occasion to consider the scope of the term "wood" in Steinhardt & Bros. v. United States, 9 Ct.Cust.Appls. 62, 66 (1919). A narrow definition urged by the Government was rejected. The court stated:

> We think that lexicographers and common knowledge warrant us in saying that wood is a very broad term and includes not only material obtained from exogenous plants, but also like substances obtained from palms, from bamboo, which is a giant grass, and from some ferns which are herbaceous plants.

The common meaning of "wood," as set forth in *Steinhardt*, is presumed to have continued unless it has been changed by subsequent legislation. See United States v. Great Pacific Co., 23 CCPA 319, 324 (1936).

The majority admits that *arundo donax* would fall within the *Steinhardt* characterization of "wood." However, *Steinhardt* is dismissed as having been decided under a different statute, and a narrow, botanically precise, definition of "wood" is implicitly substituted.

Unless compelled by statutory change, I see no reason to abandon the flexible, common-meaning approach taken in *Steinhardt*. I believe that the TSUS was not enacted with an intent to change the common, or tariff, meaning of "wood" or adopt scientific definitions for all botanical terms. I would follow settled principles of construction and resolve the present controversy on the basis of the common meaning of the term "wood."

Considering the testimony at trial as a whole, the samples of *arundo donax* of record, which are themselves "potent witnesses," American Express Co. v. United States, 39 CCPA 8, 11, C.A.D. 456 (1951), and the common meaning of "wood" judicially determined and not changed by legislation, I am of the opinion that *arundo donax* is properly embraced, for tariff purposes, within the meaning of "wood." I believe the Customs Court should have sustained appellant's claim for classification under item 200.40, and I would reverse.