INTER–PACIFIC CORP., Plaintiff,

v.

The UNITED STATES, Defendant.

Court No. 77–1–00044.

United States Court of
International Trade.

Aug. 22, 1984.

Leonard M. Fertman, Los Angeles, Cal. (James W. McDonald and Robert M. Pave, Los Angeles, Cal., at the trial and Leonard M. Fertman and James W. McDonald, Los Angeles, Cal., on the briefs), for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Jerry P. Wiskin, New York City, at the trial and on the brief), for defendant.

LANDIS, Senior Judge:

This case, tried before me on November 15, 1983, in Los Angeles, California, involves the importation of certain footwear manufactured in Taiwan and subsequently imported into the United States between September 1975 and December 1975. My previous opinion on summary judgment appears in 1 CIT 338 (1981).

The merchandise was classified by Customs under 700.60 of the Tariff Schedules of the United States (TSUS). Plaintiff claims that said classification is incorrect and, affirmatively states that the proper classification should have been made pursuant to TSUS item 700.55.

The pertinent statutory provisions, as modified by T.D. 68–9, are provided in TSUS as follows:

SCHEDULE 7.—SPECIFIED PRODUCTS; AND NONENUMERATED PRODUCTS

Part 1.—Footwear, Headwear and Hat Braids; Gloves, Luggage, Handbags, Billfolds, and Other Flat Goods

\* \* \* . \* \* . \*

Subpart A.—Footwear

\* \* \* \* \* \*

The merchandise was assessed with duty as:

Footwear (whether or not described elsewhere in this subpart) which is over 50 percent by weight of rubber or plastics or over 50 percent by weight of fibers and rubber or plastics with at least 10 percent by weight being rubber or plastics:

\* \* \* \* \* \*

Other footwear (except footwear having uppers of which over 50 percent of the exterior surface area is leather):

\* \* \* \* \* \*

700.60 Other ................................. 20% ad val.

Plaintiff claims that the footwear is properly classified as:

Footwear (whether or not described elsewhere in this subpart) which is over 50 percent by weight of rubber or plastics or over 50 percent by weight of fibers and rubber or plastics with at least 10 percent by weight being rubber or plastics:

\* \* \* \* \* \*

Other footwear (except footwear having uppers of which over 50 percent of the exterior surface area is leather):

700.55 . Having uppers of which over 90 percent of the exterior surface area is rubber or plastics (except footwear having foxing or a foxing-like band applied or molded at the sole and overlapping the upper): . .6% ad val.

At the trial plaintiff called two witnesses and introduced four exhibits. Additionally, the parties introduced a joint exhibit (Joint Exhibit A) pursuant to an agreement of the parties (R.5–8).

Plaintiff's initial witness was Mr. Frank G. Arnstein, an executive vice president of Inter-Pacific Corp. and personally employed in the footwear industry for twenty-five years. His testimony indicates that he was employed by Inter-Pacific for twenty years and, at the time of the trial, he was in charge of merchandising and purchasing of shoes, both in the Orient and in Europe (R.9). He also participated in the design of footwear and, assisted in designing the merchandise in issue. The witness appeared to be well qualified in the shoe industry.

On direct examination the witness testified that the embroidery sewn to the shoe upper was purely an ornamentation factor (R.18) and, that the sewn embroidery imparted no structural integrity to the merchandise.

On cross-examination the witness stated that if the embroidery was removed there would be approximately two hundred (200) small perforations on the upper part of the shoe. The witness admitted that the sewn embroidery is part of the outside surface or exterior surface of the upper shoe portion (R.25) and further, a permanent part of the upper representing in excess of forty (40) percent of the exterior upper surface area.

On redirect examination, Mr. Arnstein attempted to differentiate between something that is *on the upper* and something that is *part of the upper*, stating:

On the upper means it would be part of the upper all sewn in. A part of the upper would be, you know, decoration or ornamentation. (R.28)

On recross examination the witness hesitantly stated that the embroidery sewn onto the upper shoe portion in the related Exhibits was strictly for decorative purposes and that part of the sewing (indicating where the pin holes were located) was a permanent affixing (R.30).

Plaintiff's final witness was Mr. Pasquale DiFabrizio, a self-employed custom shoe designer and shoemaker. Direct examina-

tion bore out the fact that the witness had both an excellent history in the shoe designing industry and in the custom shoe construction industry. The witness testified that the embroidery sewn to the upper of shoe Exhibit I seemed purely as an ornamentation providing no structural integrity to the basic footwear (R.36). He further stated that removal of the embroidery would not make the merchandise in issue unserviceable as footwear (R.37). Mr. DiFabrizio also stated that the embroidery on the merchandise in issue was on the upper part of the shoe but, was not a part of the upper shoe. (R.38).

On cross-examination the witness stated that embroidered sewing was intended to be part of the permanent surface of the shoe (R.40).

On recross examination the witness stated that the embroidery in Exhibits 1, 2, and 3 was part of the exterior surface of the upper.

The central issue in this case is the composition of the exterior surface area of the shoe upper. However, before the court can determine the aforementioned issue it must initially resolve the peripheral issue of what constitutes the shoe upper. Specifically, whether the embroidery sewn on the shoe upper is part of the exterior surface of the upper.

Plaintiff basically contends that the embroidery sewn on the upper shoe should be disregarded in determining what constitutes the composition of upper exterior surface because the embroidery has no utilitarian function nor does it add to the usefulness of the shoe. In support of its argument plaintiff relies heavily on two cases, *Castelazo & Associates, A/C Stonewall Trading Co. v. United States*, 60 Cust.Ct. 649, C.D. 3486, 286 F.Supp. 313 (1969), aff'd, 57 CCPA 16, C.A.D. 970, 417 F.2d 798 (1978), and *Pitt and Scott v. United States*, 55 Treas.Dec. 798, T.D. 43408 (1929).

Defendant contends that the decisions in *Castelazo* and *Pitt* cases are not controlling as they were decided pursuant to a different tariff law then in effect.

Reviewing all the evidence of record including the trial transcript and relevant cases, I find that judgment should enter for defendant.

Plaintiff's reliance upon the *Castelazo* case and the *Pitt* case is not warranted.

 *Stare decisis* is applicable where a decision in a prior case involves the same merchandise and the same issues as those in the present case. *United States v. Mercantil Distribuidora, S.A. et al.*, 45 CCPA 20, C.A.D. 667 (1957); *Allen Forwarding Co., A/C Liberty Fabrics of New York, Inc. v. United States*, 68 Cust.Ct. 66, C.D. 4337, 340 F.Supp. 412 (1972). Where the merchandise or the issues are not the same the doctrine of *stare decisis* is not controlling. *Corning Glass Works v. United States*, 79 Cust.Ct. 72, C.D. 4716, 448 F.Supp., 262 (1977), rev'd, other grounds, 66 CCPA 25, C.A.D. 1216, 586 F.2d 822 (1978); *Mutual Supply Co. v. United States*, 13 Cust.Ct. 181, C.D. 891 (1946). The rule of *stare decisis* does not apply if the case relied upon a prior tariff act and the present case arose under the Tariff Schedules of the United States where the pertinent provisions contain substantially different language which, in turn, presents different issues for the court to decide. *Rico Imports Co. v. United States*, 65 Cust.Ct. 554, C.D. 4138, 320 F.Supp. 989 (1970), aff'd, 60 CCPA 15, C.A.D. 1075, 469 F.2d 699 (1972); *John H. Faunce, Inc., Masonite Corporation v. United States*, 80 Cust.Ct. 139, C.D. 4747 (1978).

 To apply the concept of *stare decisis* as applied to similar merchandise under different tariff laws, the court must compare the language of the underlying tariff laws to find a common denominator representing the standards by which the merchandise is to be classified. Absent this similarity of standards the doctrine cannot apply because there is no commonality of issues between the heretofore decided cases and the case presently before the court.

An examination of the statutes in effect at the time of decision of the *Pitt* case and the *Castelazo* case indicates that the merchandise in those cases was classified pursuant to a different standard than that which is in effect and relevant under TSUS.[1] In *Pitt* and *Castelazo* the standard for classification was *chief value*. Under TSUS there is a bifurcated standard consisting of *weight of the material and the combined exterior surface area of the principle components of the upper*.

The key issue in *Pitt* was that the article in issue should be classified under its *eo nomine* designation commonly known as a shoe. In that case the ornament comprised the chief value of the article to be classified. Customs classified the article based upon the chief value of the ornament pursuant to paragraph 1428. The court, however, could not overlook the fact that the basic article was a shoe. In reversing the classification the court stated:

> While these shoe ornaments are carried on the person, they are so carried as an integral part of the shoe. They are permanently attached thereto. The article before us for classification is the shoe—the entirety—not the ornament attached. The shoe is an article of wearing apparel and is worn by the user '*for warmth or protection like clothing*.' We could not classify the shoe under paragraph 1428, and by reason of the fact that the ornament is a part of the shoe we can not classify the ornament thereunder. Id., 801

The court's subsequent rationalization that the article of chief value was purely ornamental having no utilitarian value and whose removal would destroy the basic item, viz., the shoe, must be read in context with the court's finding that the overall article be classified under its *eo nomine* designation as a shoe. The court was confronted with competing tariff provisions. It chose to follow the one that was "... much more definite, clear, comprehensive and narrow ..." (Id., p. 803). The court did not decide whether the ornament was a part of the upper of the shoe. That was not in issue. Indeed, the court stated, "That the uppers of these shoes are in chief value of silk is not disputed." Id., 800. The court did decide that because the ornaments had no utilitarian value they could not be classified as articles separate and apart from the shoe pursuant to paragraph 1428 and, therefore, they are deemed carried on the person as an integral part of the shoe. In essence, the court held that the *eo nomine* shoe designation took precedence over the component material of chief value, metal.

Likewise, *Castelazo* is distinguishable on its facts. In *Castelazo* the issue was whether a fur-trimmed vinyl button *glued* to the upper of the footwear is considered part of the upper for tariff purposes or whether it is merely an ornamental accessory or trim not a part of the upper. In that case the court was very cognizant of the fact that the fur-trimmed vinyl button was *merely glued* to the upper and that its removal would not damage the slipper nor

---

1. The pertinent statutes in *Castelazo* were:

Paragraph 1530(e) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

Boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing:

With soles wholly or in chief value of india rubber or substitutes for rubber .................. 20% ad val.

Paragraph 1537(b) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

Manufacturers of india rubber or gutta-percha, or of which these substances or either of them is the component material of chief value not specially provided for (except * * *):

Boots, shoes, or other footwear, wholly or in chief value of india rubber ..................... 12½% ad val.

The pertinent statutes in *Pitt* were paragraphs 1405 and 1428 of the Tariff Act of 1922.

Par. 1428. * * * and articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, * * * and like articles; all the foregoing * * * composed of metal, * * * 80 per centum ad valorem; * * *.

Par. 1405. Boots, shoes, or other footwear, the uppers, of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, or silk, or substitutes for any of the foregoing, whether or not the soles are composed of leather, wood, or other material, 35 per centum ad valorem.

render it unsalable or unserviceable as footwear.[2]

Additionally, the Appellate Court in affirming *Castelazo* stated, "The fact that a shoe might have only two functional parts does not compel a conclusion that everything in or on the shoe is a component of one of the functional parts." *Castelazo*, 57 CCPA 16, 18, 417 F.2d 798.

Furthermore, in *Castelazo* the fur material in issue was not directly attached to the slipper but was attached to a button which in turn was attached to the slipper and then only to a small part of the upper part of the slipper. In the present case the alleged ornamentation is attached to the upper by means of sewing through the vinyl upper creating a multitude of perforations. Plaintiff's witness, Mr. Arnstein, on cross-examination testified that if the stitches which attach the embroidery to the vinyl were removed there would be approximately 200 small holes in the vinyl (R.21).

Additionally, the court in reviewing the samples introduced at the trial similarly concludes that the removal of the stitches attaching the embroidery to the vinyl would result in numerous unsightly holes in the vinyl. It is axiomatic that representative samples of the imported merchandise are often potent witnesses, *United States v. The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932), which may even serve to negative a witness' testimony, *Kalimar, Inc. v. United States*, 66 Cust.Ct. 112, C.D. 4178 (1971).

■ Despite the testimony of Mr. Arnstein that removal of the embroidery with the subsequent causation of many perforations would not render the merchandise unserviceable as a shoe the court, nonetheless, relying on examination of the evidentiary samples is of the opinion that if these stitches were removed salability of the merchandise would be severely if not totally impaired.

In examining the statutory language under TSUS it is evident that Congress intended footwear be classified under item 700.55 only when the exterior surface area of the upper is at least 90% of rubber or plastics. The statute does not differentiate between a functional or utilitarian part of the upper and an ornamental part of the upper. It refers only to the exterior surface thereof.

■ Ordinarily, tariff terms are presumed to be used in their common meaning unless otherwise limited by Congress. *United States v. Corning Glass Works*, 66 CCPA 25, C.A.D. 1216, 586 F.2d 822 (1978). As such, the courts may refer to dictionaries and other lexicons to aid them in interpreting statutory language. *United States v. C.J. Tower & Sons of Buffalo, N.Y.*, 48 CCPA 87, C.A.D. 770 (1961).

■ The common meaning of the term exterior surface area is clear. It is a sensory perception manifest as being the outermost covering of a particular object without regard to the functionality of the covering.[3] TSUS has effectively changed the classification standard so that the judicial distinction made between the upper and an ornament attached thereto is no longer of

---

**2.** *Castelazo* was decided after a brief trial. The trial transcript consists of twelve (12) pages in its entirety of which eight (8) pages are devoted to the testimony of Mr. Lew Jackson, the only witness called. Mr. Jackson testified that the fur button was cemented to the slipper and that its removal would not effect the serviceability or the salableness of the slipper.

The opinion stated that, "plaintiff's witness further testified that the fur button was used strictly for decorative or ornamental purposes and the removal of the button would not damage the slipper nor render the shoe unsalable or unserviceable as footwear". (Id., 60 Cust.Ct. at 651, 286 F.Supp. 313). Later in the opinion the court in applying the *Pitt* rationale to its facts

quoted from *Pitt*, "... It is a part of the shoe and permanently attached thereto. To remove it [ornament] from the shoe would without doubt injure the shoe." (*Pitt, supra*, 803). The later quote must have, of course, referred to the fact that *the ornament* in *Pitt* could not be classified separately under paragraph 1428. Indeed, the *Pitt* court completed the above quote with a final sentence to that paragraph stating, "It [ornament] cannot be classified separately." (Id., 803). It appears that the court in *Castelazo* took certain language from *Pitt* out of context.

**3.** *Webster's Third New International Dictionary (1968 ed.)* defines exterior as: "1. situated at and forming the outer surface or limit." *Funk*

consequence. Rather, of import now is the manner in which something (whether ornamental or not) is attached to the upper. If it is attached in such a way that it covers the underlying plastic surface and a normal viewing discloses that it constitutes at least part of the exterior surface area of the upper then that part constituting the external surface area of the upper must be deemed part of the upper and its composition must be included in arriving at the overall area of the upper.

Indeed, plaintiff's witness, Mr. Arnstein, testified that the embroidery was intended to be *permanently* sewn on and that it is a *permanent part of the exterior surface of the upper.* (R.26)

For this court to draw the distinction that because something is ornamental it cannot be deemed part of the upper when visibly it clearly forms part of the exterior surface of the upper would be adding a further dimension never intended by Congress. Schedule 7, Part 1, Subpart A, Headnote 3(a) demonstrates the importance Congress placed on the visibleness or outward appearance of the exterior surface area, "... the rubber or plastics forming the exterior surface area specified, if supported by fabric or other material, must coat or fill the supporting material with a quantity of rubber or plastics sufficient to *visibly and significantly* affect the surface otherwise than by change in color ...". (emphasis supplied)

Therefore, the court finds that for tariff purposes the alleged ornamental sewing is a part of the shoe upper and constitutes part of the exterior surface area of the upper. Further that said sewing represents in excess of ten percent of the exterior surface area of the upper based upon the affidavit and laboratory analysis by Ms. Irma Rueckert which was agreed upon by the parties.

Moreover, plaintiff has failed to overcome the presumption of correctness attached to the Government's classification. 28 U.S.C. § 2639(a); *Yamaha International Corp. v. United States,* 7 CIT, Slip Op. 84–20 (decided March 9, 1984).

## CONCLUSION

Customs officials properly classified the merchandise in issue pursuant to TSUS item 700.60 as footwear having uppers of which less than ninety (90) percent of the exterior surface area is rubber or plastics. The *Castelazo* and *Pitt* cases do not constitute a viable precedent in this action as both fail to meet *stare decisis* requirements. The samples submitted in evidence indicate that removal of the stitching attaching the embroidery to the vinyl upper would render the shoe unsalable. Plaintiff has not overcome the presumption of correctness attached to the Government's classification.

Therefore, this court respectfully finds that judgment shall be entered for defendant and, that the complaint is in all respects, dismissed.

Let judgment enter accordingly.

---

and *Wagnalls New Standard Dictionary of the English Language (1942 ed.)* defines exterior as: "2. Forming the outer side (of) *constituting or connected with* the external part" (emphasis supplied). "3. Immediately and outwardly manifest; noted by the senses; visible." *Webster's (supra)* defines surface as: "1. The exterior or outside of an object or body: the outermost or uppermost boundary."