**AMKO INTERNATIONAL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 98–160.**
**Court No. 94–11–00718.**

United States Court of International Trade.

Dec. 2, 1998.

O'Donnell, Byrne & Williams (Michael A. Johnson and R. Kevin Williams), Chicago, IL, for Plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert), Mark G. Nackman, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, Washington, DC, for Defendant.

## OPINION

POGUE, Judge.

In this action, Plaintiff, AMKO International Inc., challenges the classification of its imported merchandise by the United States

Customs Service ("Customs"). The parties have each moved for summary judgment pursuant to USCIT R. 56. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a)(1994).

This case involves the proper classification of two types of footwear—"PU Snow Boots" and "PU Hikers"—within heading 6402 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Upon liquidation, Customs classified Plaintiff's footwear under subheading 6402.91.50, HTSUS, and assessed a 37.5% *ad valorem* duty. Plaintiff claims that both types of footwear are properly classified under subheading 6402.91.40, HTSUS, with a 6% *ad valorem* duty.[1]

Neither party disputes that the Plaintiff's footwear are properly classified under subheading 6402.91. Subheading 6402.91 covers certain footwear with outer soles and uppers of rubber or plastic covering the ankle. Subheading 6402.91, however, is further subdivided into subheadings 6402.91.40 and 6402.91.50. Subheading 6402.91.40 provides for footwear with uppers having an external surface area that is over 90% rubber or plastic. Subheading 6402.91.50 provides for footwear that is designed to protect against inclement weather.

The parties now agree that the "hikers" are properly classifiable under HTSUS Item 6402.91.40. *See* Pl.'s Statement of Material Facts ("PSMF"), ¶ 6, at 2; *see also* Def.'s Response to PSMF ("Def.'s Resp."), ¶ 6, at 1. Accordingly, the Court grants summary judgment to the Plaintiff on this aspect of the case. Thus, only the proper classification of the "snow boots" remains at issue.

### Undisputed Facts

Plaintiff's snow boots are over-the-calf boots with rubber soles. They are designed to provide protection from cold or inclement weather and are lined with an imitation fleece "fur," which is a textile product providing insulation inside the entire boot for protection against cold or inclement weather. PSMF, ¶ 12, at 3.

The part of Plaintiff's snow boots that is above the sole is called the "upper."[2] The uppers do not have a "foxing-like band," PSMF, ¶ 10, at 3; Def.'s Resp., ¶ 10, at 2, and are made entirely of non-molded construction with all of the functional stitching exposed. PSMF, ¶ 11, at 3; Def.'s Resp., ¶ 11.

The external surface of the upper is encircled by a "Velcro" textile strap that has a Velcro fastener. PSMF, ¶ 13, at 4; Def.'s Resp., ¶ 13, at 2. In addition, some of the imitation fleece "fur" that lines the inside of the boot is exposed around the top of the upper.[3] *Id.* The external surface area of the boot's upper is more than 90% plastic if the calculation of the constituent materials of the external surface area *excludes* the exposed "fur." PSMF, ¶ 17, at 5; Def.'s Resp. ¶ 17, at 2. The external surface area of the boot's upper is less than 90% plastic, however, if the

---

1. The provisions under consideration are as follows:.
   6402 Other footwear with outer soles and uppers of rubber or plastics:
   6402.91 Covering the ankle:
   6402.91.40 Having uppers of which over 90 percent of the external surface area (including any accessories or reinforcements such as those mentioned in note 4(a) to this chapter) is rubber or plastics except (1) footwear having a foxing or a foxing-like band applied or molded at the sole and overlapping the upper and (2) except footwear (other than footwear having uppers which from a point 3 cm above the top of the outer sole are entirely of non-molded construction formed by sewing the parts together and having exposed on the outer surface a substantial portion of functional stitching) designed to be worn over, or in lieu of, other footwear as protections against water, oil, grease or chemicals or cold or inclement weather ...

   6402.91.50 Other:
   Footwear designed to be worn over, or in lieu of, other footwear as a protection against water, oil, grease or chemicals or cold or inclement weather ...

2. "For the purposes of the classification of footwear in this Chapter, the constituent material of the uppers must also be taken into account. The upper is the part of the shoe or boot above the sole...." Harmonized Commodity Description and Coding System Explanatory Notes (1996)("Explanatory Notes"), at 957.

3. Plaintiff denies that the exposed "fur" is the result of an intentional design choice and claims that the "fur" is not always visible when the boot is worn. *See* Pl.'s Response to Def.'s Statement of Material Facts as to Which There is no Genuine Issue to be Tried, at 4.

same calculation *includes* the exposed "fur." [4] PSMF, ¶¶ 13 & 16, at 3–4; Def.'s Resp. ¶¶ 13 & 16. If the external surface area of the upper of Plaintiff's snow boots is more than 90% plastic, the boots meet all of the criteria necessary for classification under HTSUS Item 6402.91.40 with a 6% *ad valorem* duty.[5]

## Standard of Review

Rule 56 of this court permits summary judgment when "there is no genuine issue as to any material fact...." USCIT R. 56(d); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1560 (Fed.Cir.1995); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir.1987).

■ In considering whether material facts are in dispute, the court must consider the evidence in a light most favorable to the non-moving party, drawing all reasonable inferences in its favor, as well as all doubts over factual issues. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Mingus*, 812 F.2d at 1390. Nevertheless, "[w]hen a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." USCIT R. 56(f). Once it is

clear there are no material facts in dispute, a case is proper for summary adjudication. The present matter is such a case.

■ Customs' classification is before this Court for *de novo* review pursuant to 28 U.S.C. § 2640(a) (1994). "The ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision ... entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed." *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed.Cir.1994). The first step is a question of law, and the second step is a question of fact. *See E.M. Chem. v. United States*, 9 Fed. Cir. (T) 33, 35, 920 F.2d 910, 912 (1990); *see also Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1364–65 (Fed.Cir.1998)(clarifying the two-step inquiry).

## Discussion

■ The Explanatory Notes to the HTSUS comment that, with certain exceptions, Chapter 64 covers "various types of footwear (including overshoes) irrespective of their shape and size, the particular use for which they are designed, their method of manufacture or the materials of which they are made." [6] Explanatory Notes, at 956. Heading 6402 covers "other footwear with outer soles and uppers of rubber or plastic." *See* supra n. 1. The Explanatory Notes elaborate: "(D) For the purposes of the classifica-

---

4. Whether the exposed "fur" is included in or excluded from the external surface area of the boot's upper, some portion of the external surface area of the upper is textile because the "Velcro" strap is textile. If only the area of the Velcro strap is considered, however, the textile portion of the upper is less than 10% of the "external surface area" of the upper. "[E]xcept for the textile strap encircling the upper, the Velcro fastener, and the exposed 'fur,'" the external surface area of the boot is entirely rubber or plastic. PSMF, ¶ 13, at 3–4.

5. Subheading 6402.91.40 contains two exclusions. The second exclusion also contains an exemption within it. Thus, footwear that provides protection against cold or inclement weather is excluded from this subheading unless it is made of non-molded construction with the func-

tional stitching sewing the parts together exposed. The parties agree that Plaintiff's footwear is so constructed as to qualify for the exemption; thus, the proper classification turns on the measurement of the external surface area of the upper.

6. The Explanatory Notes "provide a commentary on the scope of each heading of the Harmonized System and are thus useful in ascertaining the classification of merchandise under the system." H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582. They do not constitute controlling legislative history, but are intended to clarify the scope of the HTSUS and to offer guidance in interpreting its subheadings. *See Mita Copystar America v. United States*, 21 F.3d 1079, 1082 (Fed.Cir. 1994).

tion of footwear in this Chapter, the constituent material of the uppers must also be taken into account." Explanatory Notes, at 957.

■ The question before the Court is whether, as claimed by the Plaintiff, the imported snow boots should be classified, within heading 6402 of Chapter 64, under subheading 6402.91.40 as "[h]aving uppers of which over 90 percent of the external surface area ... is ... plastic...." *See* supra n. 1 Thus, the dispositive issue in this case concerns the interpretation of HTSUS subheading 6402.91.40.[7] By its terms, subheading 6402.91.40 requires a determination of the constituent materials of the "external surface area" of the subject merchandise. *Id.* Accordingly, the Court must determine whether the "fur" exposed around the top of the upper is to be included as a part of the external surface of the boot for the purposes of the 90% requirement of subheading 6402.91.40.

■ To determine the proper meaning of tariff terms in the statute, the terms are "construed in accordance with their common and popular meaning, in the absence of contrary legislative intent." *E.M. Chem.*, 920 F.2d at 913; *see also Texaco Marine Services, Inc. v. United States*, 44 F.3d 1539, 1544 (Fed.Cir.1994). Courts may rely upon their own understanding of the term used and may consult dictionaries, scientific authorities, and other reliable sources of information. *See Brookside Veneers, Ltd. v. United States*, 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789 (Fed.Cir.1988), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *Nippon Kogaku (USA), Inc. v. United States*, 69 C.C.P.A. 89, 92–93, 673 F.2d 380 (1982).

The term "external" means "[r]elating to, existing on, or connected to the outside or an outer part; exterior ... [o]f or relating chiefly to outward appearance...." THE AMERI-

CAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 648 (3d ed.1992). As this court explained in *Inter–Pacific Corp. v. United States*, the meaning of "exterior" is "the outermost covering of a particular object without regard to the functionality of the covering." 8 CIT 132, 139, 594 F.Supp. 739, 743 (1984). Accordingly, the external surface area of the boot is the outermost covering or side of the boot. Thus, to the extent that the Plaintiff's merchandise has "fur" exposed on the outer part or covering of the boot—and regardless of the function of that "fur"—it must be included in the calculation of the external surface area of the boot.

■ Note 3(a) to Chapter 64 provides that "the terms 'rubber' and 'plastics' include woven fabrics or other textile products with an external layer of rubber or plastics being visible to the naked eye ...." HTSUS, Chapter 64, Notes. It follows from this rule that with regard to a footwear upper made in part of an exposed textile product without an external layer of rubber or plastics, the exposed textile product will be measured as a part of the external surface area of the boot in determining whether the 90 percent requirement of subheading 6402.91.40 is met.

Plaintiff argues that the "fur" component of the upper, whether or not visible or exposed, is a *lining* material and that such lining should be regarded as a part of the *inner surface area* of the merchandise rather than as a part of the "external surface area" of the boot. *See* Pl.'s Mem. Sup. Mot. Sum. J. ("Pl.'s Brief") at 16–18 (emphasis provided). Therefore, Plaintiff claims, the "fur" should not be considered in the classification determination. *Id.* at 19. Plaintiff relies on the declaration in the Explanatory Notes, stating that "[t]he constituent material of any lining has no effect on classification," to support its argument. *Id.* at 17–18 (citing Explanatory Notes, at 957).

---

**7.** Rule 6 of the General Rules of Interpretation of the Harmonized Tariff Schedule · provides that, ."[f]or legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules, on the understanding that only subheadings at the same level are comparable. For the purposes of this

rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires." General Rules of Interpretation of the Harmonized Tariff Schedule, R. 6. In turn, Rule 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes...." · *Id.* at R. 1.

Lining, however, means a "covering or coating for an *inside* surface." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1047 (3d ed.1992)(emphasis provided). Accordingly, the part of the textile "fur" material that protrudes at the upper part of the Plaintiff's boot is not lining because it is not a covering or coating for the inside surface. Moreover, as noted above, the meaning of "exterior" is "the outermost covering of a particular object without regard to the *functionality* of the covering." *Inter-Pacific Corp.*, 8 CIT at 139, 594 F.Supp. at 743 (emphasis provided). Thus, contrary to the Plaintiff's assertion, it is only the "fur" lining inside of the Plaintiff's boot—not the exposed "fur" on the outer part or external covering of the upper—that is to have no effect on the classification of the boot.

Plaintiff also argues that the plain language of the "add-back" provision of subheading 6402.91.40 precludes consideration of the "fur." Pl.'s Brief at 21. The "add-back" provision provides that the "external surface area" shall include "any accessories or reinforcements such as those mentioned in note 4(a) to this chapter." *See* supra n. 1. Note 4(a) contains a list of exemplars for "accessories or reinforcements such as ankle patches, edging, ornamentation, buckles, tabs, eyelet stays or similar attachments." HTSUS, Chapter 64, Notes. Plaintiff claims that the "fur" that is visible or exposed on the outside of the boot is not an "attachment" because it is not *ejusdem generis* with the exemplars listed in Note 4(a). Pl.'s Brief at 22. Specifically, Plaintiff argues that because the "fur" is not a separate piece of material "superadded" to the boot, it cannot be considered an "attachment." *Id.* Rather, Plaintiff claims, the exposed "fur" is part of the "necessary construction" of the boot. *Id.*

Plaintiff fails to recognize the import of the "add-back" provision of subheading 6402.91.40. If the drafters of the HTSUS saw fit to include accessories and attachments, *a fortiori,* they must have intended that materials that are part of the exterior of the boot be included in the surface area itself. In addition, the fact that the exposed "fur" is the same material as the lining "fur" does not prevent it from being considered to be a "separate piece" added to the external surface area. In actuality, just like the accessories referred to in the "add-back" provision, the exposed fur is attached to and sewn on the edge of the plastic outer covering of the boot. *See* PSMF, Ex. 7, ¶ 25, at 5 ("the lining layer (consisting of the fleece and its backing) is folded over the top of the external layer and seamed to the plastic external surface material by sewing them together."). For the purpose of determining the constituent materials of the "external surface area," the "fur" could be considered to be a separate piece added to the outside of the boot. Thus, with regard to its relation to the external surface area, the exposed "fur" could be considered to be the kind of attachment referred to in the exemplars in Note 4(a), which are to be "added-back" in the calculation of the "external surface area."

Finally, Plaintiff argues that inclusion of the "fur" in the measurement of the external surface area will render that measurement unpredictable and, therefore, arbitrary and capricious. Pl.'s Brief at 23. Plaintiff claims that "the lining fleece which projects above the outer shell of the boot varies greatly in quantity." *Id.* "As the samples show, a slight and uneven projection of the imitation fleece lining is visible when the boot is not on the foot ... at least one reputable laboratory found almost no fleece to be visible on a sample of the boot when the boot was on the foot.... It appears to depend on who is wearing the boot and whether they are wearing winter socks." Pl.'s Reply Brief at 6.

It is settled law, however, that the classification of the merchandise is based on its condition as imported. *United States v. Citroen,* 223 U.S. 407, 414–15, 32 S.Ct. 259, 56 L.Ed. 486 (1912)("The rule is well established that 'in order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.' "). The Plaintiff does not challenge *Customs Laboratory Methods* of measurement. PSMF, Ex. A, at 3–4 (Customs Laboratory Methods: Footwear)("[C]ut the upper into pieces so that they may be laid flat.... Determine the relative areas of

each of the components with a planimeter, or image analyzing system....."). Nor does Plaintiff claim that Customs Laboratory Methods do not measure the actual boot as imported. *See* Pl.'s Reply Brief at 8 n. 5 ("In fact, the boot is measured ... by cutting the upper from the sole at its point of juncture and then splitting the upper up the back (on the seam in the middle) and down the front (from the apex of the toe). These two halves are then photocopied and the resultant photocopies are measured with a planimeter. Thus, not only is the boot off the foot, but it has been cut apart and the measurements made from flat copies of the two halves of the upper.").

Accordingly, Plaintiff's challenge to the inclusion of that part of the "fur" that is on the outer covering of the boot in the calculation of the external surface area of its boots as imported must fail.

### Conclusion

Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted except as to the agreed-upon classification of the Plaintiff's "hikers." Judgment shall be entered accordingly.

### *JUDGMENT*

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, Plaintiff's motion for summary judgment is granted as to the "hikers" but denied with regard to the "snow boots;" Defendant's cross-motion for summary judgment is granted as to the "snow boots." The U.S. Customs Service shall reliquidate the "hikers" under subheading 6402.91.40, HTSUS, and shall refund all excess duties with interest as provided by law. All of Plaintiff's other claims are dismissed.