Slip Op. 01-91

## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

| | |
|---|---|
| _____ **x** | |
| CARRINI, INC. **:** | |
| Plaintiff, **:** | Court No. 97-05-00845 |
| v. **:** | |
| UNITED STATES, **:** | |
| Defendant. **:** | |
| _____ **x** | |

[Plaintiff's Motion for Summary Judgment Granted; Defendant's Cross-motion for Summary Judgment Denied.]

Decided: August 2, 2001

*Law Offices of Elon Pollock, PC, (Elon A. Pollock), Eugene P. Sands,* for Plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General, United States Department of Justice; *Joseph I. Liebman*, Attorney In Charge, International Trade Field Office; (*Bruce N. Stratvert*), Civil Division, Commercial Litigation Branch, United States Department of Justice; *Beth C. Brotman*, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for Defendant.

## OPINION

### I. INTRODUCTION

**BARZILAY, JUDGE:**

This case is before the court on cross-motions for summary judgment. Plaintiff

("Carrini"), an importer of moderately priced women's shoes, challenges Defendant's

("Customs") reclassification of Carrini Style No. 7606 shoe, from the 1996 Harmonized Tariff

Schedule of the United States ("HTSUS") provision 6402.99.1865 to provision 6402.99.3060,

which raised import duties on the shoe from 6% *ad valorem* to 37.5% *ad valorem.* The essence of

the classification difference between the parties centers on whether the uppers of the shoe are more or less than 90% plastic.  Carrini contends that Customs improperly included the shoe's laces when calculating the composition of the uppers, thereby disallowing classification under 6402.99.1865.  This court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a) (1994).

## II. BACKGROUND

Carrini imported 39,168 pairs of Style No. 7606 shoes in May and June of 1996.  *See Pl.'s Separate Statement of Undisputed Facts* ("*Pl.'s Statement*") at ¶ 1. Style 7606 consists of

> a high heeled, woman/misses sandal style shoe with an exterior upper surface comprised of five (5) sets of plastic/rubber straps, which are folded to create ten (10) looped ends that serve as eyelets. . . .  Flat ends of the straps are sewn into the sole of the shoe so that the straps and loops fall on the top of the foot, five (5) per side.  To hold the shoe on the wearer's foot, the looped ends are held together by means of a textile lace, <u>threaded</u> <u>though</u> <u>the</u> <u>loops</u> [and crossing over the foot], which the wearer must pull tight and tie.

*See Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J.* ("*Pl.'s Mem.*") at 2 (citations omitted). The shoes originated in China, and were exported from Hong Kong to the United States through the Port of Los Angeles, California.  *See Pl.'s Statement* at ¶ 2.  Carrini entered the merchandise at a duty rate of 6% *ad valorem* under HTSUS provision 6402.99.1865.  *See id.* at ¶ 9.  Provision 6402.99.1865 covers shoes with uppers that have an external surface area of more than 90% rubber or plastic.

On July 10, 1996, Customs sampled the merchandise and determined that Style 7606 had an upper with an external surface area ("ESAU") consisting of 87.6% rubber or plastic and 12.4% textile.  *See id.* at ¶ 12.  In its calculation, Customs included the shoe's textile laces, except the portions covered by the shoe's plastic loops.  *See id.* at ¶ 11; *Def's Resp. to Pl's Statement of Undisputed Facts* ("*Def's Resp.*") at ¶ 11.  Following this determination, Customs issued a Notice

of Action to reclassify Style 7606 under HTSUS provision 6402.99.3060 at the higher duty rate of 37.5% *ad valorem*.  *See Pl.'s Statement* at ¶ 14.

On August 9, 1996, the entries were liquidated.  *See id.* at ¶ 15.  Carrini filed a timely protest to the reclassification on November 1, 1996.  *See id.* at ¶ 16.  Customs denied Carrini's protest on November 14, 1996, and on May 15, 1997, Carrini filed this action.  *See id.* at ¶ 17.  Carrini seeks reliquidation of the merchandise at a rate of 6% *ad valorem* under HTSUS provision 6402.99.1865 on the ground that it was improper to include the shoe's textile laces when calculating the composition of the external surface area of the shoe's upper.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  USCIT R. 56(c).  Moreover, summary judgment is a favored procedural device "designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987).  Whether a disputed fact is material is identified by the substantive law and whether the finding of that fact "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In a classification action once the court has decided that no material facts are in dispute, it is then left with a purely legal question involving the meaning and scope of the tariff provision and whether it includes the imported merchandise.  *See National Advanced Systems v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994).  Although there is a statutory presumption of correctness for Customs decisions,

28 U.S.C. § 2639(a)(1) (1994), when the court is presented with a question of law in a proper

motion for summary judgment, that presumption does not apply. *See Universal Elecs., Inc. v.*

*United States*, 112 F.3d 488, 492 (Fed. Cir. 1997); *Goodman Mfg., L.P. v. United States*, 69 F.3d

505, 508 (Fed. Cir. 1995) ("Because there was no factual dispute between the parties, the

presumption of correctness is not relevant.")

## IV. DISCUSSION

The court must determine the proper classification for Carrini Style No. 7606 shoe. Both

parties agree that the shoes should be classified under HTSUS subdivision 6402.99. HTSUS

provision 6402 reads in pertinent part:

> 6402: Other footwear with outer soles and uppers of rubber or plastics:
>        Other footwear:
>
> . . .
>
> 6402.99: Other:
>                 Having uppers of which over 90 percent of the external surface area
>                 (including any accessories or reinforcements such as those mentioned in
>                 note 4(a) to this chapter) is rubber or plastics. . .
>
> . . .
>
> 6402.99.18:            Other:
>
> . . .
>
> 6402.99.18.65:            Other:

*   *   *   *   *   *

6402.99.30:     Footwear with open toes or open heels; footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners, . . .

. . .

6402.99.3060: Other:

For women

The court must decide whether Customs' classification is the correct one, "both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984). It is "the court's duty to find the *correct* result, by whatever procedure is best suited to the case at hand." *Id.* (footnote omitted). Determining whether the merchandise at issue has been classified under an appropriate tariff "entails a two-step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed." *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed. Cir. 1994). The proper meaning of the tariff provision is a question of law, while the proper classification for the merchandise is a question of fact. *Id.*

The first step in determining the meaning of a statute is to examine its statutory language. *See United States v. Turkette*, 452 U.S. 576, 580 (1981). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission et al. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The court assumes that Congress used the language of commerce to draft the tariff provision, and the tariff provisions "are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent." *E.M. Chemicals v. United States*, 920 F.2d 910, 913

(Fed. Cir. 1990) (citations omitted). "To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988) (citations omitted). "Additionally, a court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings." *Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (citing *Lynteq Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992)). The Explanatory Notes are not binding, but provide guidance particularly "when they specifically include or exclude an item from a tariff heading." *H.I.M./Fathom Inc. v. United States* 21 CIT 776, 779, 981 F. Supp. 610, 613 (1997) (citations omitted).

The General Rules of Interpretation ("GRI") of the HTSUS govern the proper classification of merchandise. *See Orlando Food Corp. v. United States*, 22 CIT __, __, 140 F.3d 1437, 1439 (1998). The HTSUS is divided into headings providing general categories of merchandise, which are further divided into more particularized categories by subheadings. *Id.* If an item can be classified correctly under more than one provision, the provision providing the more specific description should be used. GRI 3(a). The article should be described "with the greatest degree of accuracy and certainty." *Orlando Food Corp.*, 140 F.3d at 1441 (citations omitted).

Carrini argues that the shoes should be classified under 6402.99.1865 because if Customs had properly excluded the shoe's laces from its calculation of the upper's surface area, the shoe

would be over 90 percent rubber or plastic as required by the provision.  The parties agree that if the laces were not included in Customs' calculations, the upper would be over 90 percent rubber or plastic.  *See Def.'s Resp.* at ¶ 13.  In support of its contention, Carrini provides the court with Customs' rulings on similar issues and argues that they conflict with Customs' position in the current action.  Carrini argues that even if the portion of the laces that covers the foot should be included in the surface area calculation, the portion of the lace that forms the bow at the top of the shoe should not be included.

In addition, Carrini contends that the shoes cannot be properly classified under provision 6402.99.3060 because the shoes can be held to the foot only with the aid of laces or fasteners.  Carrini argues that the language of HTSUS 6402.99.30, "[f]ootwear with open toes or open heels; footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners," indicates that the legislature intended the latter phrase, "that is held to the foot without the use of laces . . . or other fasteners," to qualify both open toe or heel footwear and that of the slip-on type.

Customs counters Carrini's contention, explaining that the semicolon separating the phrases indicates that the legislature intended two types of footwear to be classified under the section, one describing "footwear with open toes or heels," and one describing "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners." HTSUS 6402.99.30.  Customs contends that the textile laces were properly included when it calculated the upper's surface area.  Therefore, as the shoes could no longer be classified as shoes with uppers over 90 percent of the ESAU of rubber or plastic, Customs argues that the shoes were properly reclassified under provision 6402.99.3060.  It states that the previous rulings Carrini

provides are irrelevant because the laces on the shoe at issue are different from the laces excluded

from the external surface area calculation in the past.  *See Def.'s Reply Br. in Support of Mot. for*

*Summ. J. and in Opp'n to Pl.'s Resp.* ("*Def.'s Reply Br.*") at 3.  These laces, Customs argues, "are

a significant part of the shoe's structure and come into direct contact with the wearer's foot."  *Id.*

Customs argues that any attempt to separate the portion of the lace that forms the bow at the top

of the shoe from the part which crosses over the foot, is unworkable, as the length will be different

for each wearer.  *See id.* at 4-5.

The parties agree that the shoe, Carrini Style No. 7606, is classifiable under HTSUS

heading 6402.  The dispute arises in reference to Customs' inclusion of the shoe's laces in the

ESAU calculation.  The court holds that the laces of Style No. 7606 should not be included in the

calculation of the shoe's ESAU, and therefore, the shoe should be classified under HTSUS

provision 6402.99.1865.

Both parties rely on *Inter-Pacific Corp. v. United States*, 8 CIT 132, 594 F. Supp. 739

(1984) to provide a basis for their legal conclusions regarding the shoe's laces.  Although *Inter-*

*Pacific* was decided under the Tariff Schedule of the United States ("TSUS"), it can serve as a

starting point from which to examine the language of the two similar tariff provisions.  The court

in *Inter-Pacific* was asked to decide if embroidery could be counted as part of the ESAU of the

shoe at issue. *See id.  Inter-Pacific* defines external surface area stating:

> [t]he common meaning of the term exterior surface area is clear.  It is a sensory
> perception manifest as being the outermost covering of a particular object without
> regard to the functionality of the covering.  TSUS has effectively changed the
> classification standard so that the judicial distinction made between the upper and
> an ornament attached thereto is no longer of consequence.  Rather, of import now
> is the manner in which something (whether ornamental or not) is attached to the
> upper.  If it is attached in such a way that it covers the underlying plastic surface

and a normal viewing discloses that it constitutes at least part of the exterior surface area of the upper then that part constituting the external surface area of the upper must be deemed part of the upper and its composition must be included in arriving at the overall area of the upper.

*Inter-Pacific*, 594 F. Supp. at 743-44 (footnote omitted).

Customs interpretes this paragraph to mean that the test to decide whether a piece is included in the ESAU calculation is "whether it is visible and whether its removal would damage the shoe so as to render [the shoe] unserviceable as footwear." HQ 960625 (Sept. 17, 1999). Customs reasons that because the shoe cannot be worn without the laces, the laces' removal would damage the shoe. Customs deduces that this, combined with the fact that the laces "visibly cover" the foot, makes the lace an integral part of the shoe which should be included in the ESAU calculation. The court disagrees with Customs' interpretation of the *Inter-Pacific* language. As recognized by Carrini, *Inter-Pacific* focuses on the manner in which the piece is attached to the shoe, not on the functionality of the piece. *See* 594 F. Supp. at 743-44. The court in *Inter-Pacific* emphasized that the ornamentation at issue was "*permanently* sewn on and that it [was] a *permanent part of the exterior surface of the upper.*" *Id.* at 744 (citation omitted). The court recognized that removal of the ornamentation at issue would have "severely if not totally impaired" the marketability of the shoe if removed. *Id.* at 743. The ornamentation in *Inter-Pacific* could not be removed and replaced; it was the unique piece that completed the shoe.

In the case before the court, the laces of Carrini Style No. 7606 shoe are not permanently attached to the upper and would cause no damage to the shoe if removed. Unlike the embroidery on the shoe in *Inter-Pacific*, the laces can be detached without damaging or even affecting the surface of the shoe. The laces can be easily separated from the shoe and easily replaced; their

removal would not render the shoe permanently unserviceable.  The laces at issue do not form an integral part of the shoe and are not so unusual that the shoe would be useless if these particular laces were removed.

In addition, Customs' interpretation of the tariff provision conflicts with the opinions it has expressed in past decisions. In Treasury Decision 93-88 (October 25, 1993) ("T.D. 93-88") Customs provided footwear definitions which the court finds persuasive when read together with the tariff provision, but which Customs now attempts to repudiate.  *See* T.D. 93-88.  T.D. 93-88 states that "[t]he 'external surface' of the upper is, in general, the outside surface of what you see covering the foot . . . when the shoe is worn.  It does not include: . . . [s]hoe laces which do not cover the foot by themselves. . . ."  *Id.*  (numbering omitted).  The court notes that the word "cover" means concealing, lying over, protecting, or blanketing.  *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 524 (1993).  This definition certainly connotes more than just touching the foot.  Customs' contention in this case that the laces visibly cover the foot is unsubstantiated, given the definition of the word "cover" and an examination of the sample provided.  *See Permagrain Prods., Inc. v. United States*, 9 CIT 426, 429, 623 F. Supp. 1246, 1249 (1985) ("samples of the merchandise may be 'potent' witnesses") (citations omitted).  Only small portions of the laces touch the foot, and even those portions do not "cover the foot by themselves" as contemplated by T.D. 93-88 and the common meaning of "cover."  The laces at issue do not "cover the foot by themselves," and therefore should not be included in the ESAU.

Customs also attempts to use the "add back" provision of Chapter 64 to include the laces in the ESAU calculation as accessories.  Note 4(a) of Chapter 64 of HTSUS states that "[t]he

material of the upper shall be taken to be the constituent material having the greatest external surface area, no account being taken of accessories or reinforcements such as ankle patches, edging, ornamentation, buckles, tabs, eyelet stays or similar attachments." HTSUS, Chapter 64, Note 4(a) (1996). However, the disputed section 6402.99.18 states that the external surface area of the upper should *include* "any accessories or reinforcements such as those mentioned in Note 4(a) to this chapter." HTSUS 6402.99.18. Here, Customs contends that laces should be included among the accessories or reinforcements that are mentioned in Note 4(a).

Customs cites the Explanatory Notes to Chapter 64 in support of the proposition that the legislature intended that laces be included in Note 4(a). General Explanatory Note D explains that in determining the material which has the greatest external surface area, no account should be taken of "accessories or reinforcements such as ankle patches, protective or ornamental strips or edging, other ornamentation (e.g., tassels, pompons, or braid), buckles, tabs, eyelet stays, laces, or slide fasteners." Harmonized Commodity Description and Coding System, Explanatory Notes, (2nd ed. 1996) at 957. Customs posits that consistency requires laces to be included in accessories here if they are excluded as accessories in Note 4(a) where laces are not specifically enumerated.

However, in past rulings Customs has consistently decided that the tongue and laces were not intended to be included in Note 4(a) and therefore, not included in the calculation. *See e.g.* HQ 081305 (March 10, 1988), NY G84080 (November 22, 2000), NY C83650 (February 6, 1998). The court agrees with Customs' position displayed in HQ 081305 that:

> it appears unlikely that the authors of the Harmonized System would not have
> included them as examples in 4(a) if they intended them to be considered as such.
> Also, neither tongues nor laces appear to be "sui generis" with the examples given
> in that all the examples are presumable firmly affixed to the balance of the upper
> (unlike the easily removable and replaceable shoelaces). . . ."

HQ 081305. The ruling continues, "it is [Customs'] opinion that the tongue and laces were not intended to be part of the upper's 'external surface' per se." *Id.* The court finds this logic persuasive and holds that the laces were not intended to be included among the accessories or reinforcements referred to in Note 4(a).[1] The court finds unpersuasive the reasons proffered in this case for Customs' change in position.

Customs attempts to distinguish this ruling because the shoes are different types and the laces at issue touch the foot. The court holds that mere contact with the foot does not meet the standards contemplated by the legislature in enacting the provision at issue, the court in *Inter-Pacific*, and recognized by Customs in the past. The laces at issue here do not cover the foot by themselves. The laces do not form an integral, unique, or unreplaceable part of the shoe, nor should they be included among the accessories and reinforcements of Note 4(a). Therefore, the court holds that the shoe's laces should not be included in the ESAU calculation for Carrini Style No. 7606 shoe.

Since the court has decided the proper classification on the basis of the language and interpretation of HTSUS 6402.99.1865, it need not and does not reach the issue of whether the shoe could be classified under HTSUS 6402.99.3060.

---

[1] Following *United States v. Mead Corp.*, Customs' classification rulings are only entitled to *Skidmore* deference, meaning "a respect proportional to its 'power to persuade.'" 533 U.S. __, __, 121 S. Ct. 2164, 2175 (2001) (quoting *Skidmore v. Swift Co,*, 323 U.S. 124, 140 (1944)). Customs' classification rulings are "beyond the *Chevron pale.*" *Id.*

**V.  CONCLUSION**

For the foregoing reasons, the court holds that the Carrini Style No. 7606 shoe should be classified under HTSUS provision 6402.99.1865.  Judgment will be entered accordingly.


Dated:_____                     _____
      New York, NY                                     Judith M. Barzilay
                                                            Judge

ERRATUM

*Carrini, Inc. v. United States,* Court No. 97-05-00845, Slip Op. 01-91, dated August 2, 2001.

On page 2, under the heading **II. BACKGROUND**, in the block quote, on the fifth line, the word "<u>though</u>" should read "<u>through</u>."

August 14, 2001